June Term,
1860.

STATE
v.
PAULEY.

------

## THE STATE vs. PAULEY.

12  537
d109 513

The statute which provides that where a mortal wound shall be given in one county, by means whereof death shall ensue in another, the offense may be prosecuted in either county, is not in conflict with that provision of the constitution which secures to a person accused, the right to a trial by a jury of the county or district wherein the offense was committed.

Where a mortal blow is struck in one county, and death ensues therefrom in another, that court, in either county, which first takes cognizance of the offense, has exclusive jurisdiction thereof, and no other court can acquire any jurisdiction of it, except by a change of venue, as provided by statute.

REPORTED from the circuit court for *Grant* county, for the opinion of this court upon questions of law arising therein.

*J. T. Mills*, for the state.

*J. H. Knowlton*, for the defendant.

*By the Court*, PAINE, J. The defendant was indicted in    October 15.

Grant county, for manslaughter, in killing Moses Clark. The indictment alleged that the mortal wound was given by shooting in Clark county, on the 25th day of February, 1856, and that Clark died of the wound in Grant county, on the 30th day of June following. The circuit court has certified to us several questions of law which arose upon the trial.

The first is, in substance, whether, upon the facts stated in the indictment, the defendant could be lawfully indicted and tried in Grant county. There can be no doubt, and it was conceded on the argument, that the provisions of the statute, now found as sections 7 and 4, chap. 172, R. S., 1858, and which were then in force, were sufficient to authorize such indictment and trial, if those provisions are themselves valid. But the objection is based upon a clause of the constitution, to which, it is said, they are repugnant. That clause is in art. 1, sec. 7, and provides that the accused shall be entitled, "in prosecutions by indictment or information, to a speedy public trial by an impartial jury of the county or district *wherein the offense shall have been committed*: which county or district shall have been previously ascertained by law." It was claimed for the defendant that the offense was committed in the county where the mortal blow was given, and that therefore this provision of the constitution secures to him a right to be tried by a jury of that county, and makes it incompetent for the legislature to authorize him to be tried elsewhere.

I am unable to assent to this proposition, for two reasons, which, taken together, are to my mind entirely satisfactory. The first is, that the premises from which it is sought to be derived, are incorrect in point of fact. That is to say, the offense, if committed at all, was not committed in Clark county. And by that I mean it was not entirely committed there. The offense of manslaughter did not consist of the mere shooting and wounding of the deceased. On the contrary, the causing of his death was the most material element of the offense, and this did not take place there. The blow was struck in one county, and its effect was produced in another. Therefore the offense, which consists both of the giving of the mortal blow, and the production of its effect, cannot,

June Term,
1860.

STATE
v.
PAULEY.

strictly speaking, be said to have been committed in either county. The offense was committed partly in each—wholly in neither. And in whichever it is tried, a most essential element of it must be shown to have occurred in the other. The reasoning of Chief Justice PARKER to this effect, in the case of the *Commonwealth vs. Parker*, 2 Pick., 258, seems to me unanswerable. If, then, this constitutional provision is held to prohibit the defendant from being tried in any county except the one where the offense was committed, it follows, as a logical consequence, that he could not be tried at all. And this was the better opinion at the common law, when they first undertook to apply its general rule, that every offense was indictable in the county where it was committed, to a case of this kind. Hawkins' Pleas of the Crown, vol. 2, p. 301. The writer there says: "and therefore at the common law, if a man had died in one county of a stroke received in another, it seems to have been the more general opinion that regularly the homicide was indictable in neither of them, because the offense was not completed in either, and no grand jury could inquire of what happened out of their own county." It is true some held that the party might be indicted in the county where the blow was struck, if the body was taken back there, but the more general opinion seems to have been as just stated, and that I regard as the logical result of the argument.

But something must be done. The general rule of the law that every offense was indictable only in the county where committed, was inapplicable to such a case. But it would not do to let the murderer escape entirely, merely because a general rule, not adapted to such a special case, could not be applied to it. It must be provided that the party could be tried in one county or the other. And in determining which, there was room for an argument in favor of either. The counsel for the defendant made an argument here of much force in favor of giving the preference to the county where the blow was struck. But the utmost effect to which I think it could be entitled, would be to show that in settling this question originally between the two counties, neither being within the general rule, the preference ought

to have been given to that one in which the active agency of the defendant was used. But the legislators at an early day thought differently. And in providing against this difficulty they enacted, as far back as the time of Edward VI., that in such cases the party might be indicted and tried in the county where the death happened, and so the law remained in England until after the revolution, and has since been changed only so as to provide for an indictment and trial in either county. And this fact constitutes the second reason which, in connection with the first, satisfies me that the provision of the constitution cannot be construed as having the effect contended for. For it is obvious that this clause of the constitution was not inserted with particular reference to a case of this kind. On the contrary it was intended merely as the enactment of the general rule of the common law, that every offense shall be triable only in the county where committed. For the great majority of cases, the rule in that language is expressed with sufficient accuracy, because they are committed entirely in one county. But when an attempt is made to apply it to a case of this peculiar kind, where the blow is struck in one county and the death happens in another, it is found inapplicable. It leaves it uncertain in which county the accused may be tried, or rather, if strictly applied, it leaves it certain that he can be tried in neither. It must be determined then, in view of this result, what was the intention of this clause of the constitution with respect to cases of this kind. It cannot for a moment be supposed that its intention was to restore the doubts which existed at the common law as to which was the proper county for trial, or whether there could be any trial at all. Was it then not only to provide against all such doubts, but to reverse the rule as it had been so long settled, and provide expressly that the trial should be in the county where the blow was struck? It seems to me impossible that any such intention can be assumed for it. The language used is utterly irreconcilable with such a theory. For it is expressed in substantially the same manner in which the general rule of the common law was stated, upon which all the doubt and uncertainty had arisen. Those who framed the instrument were

undoubtedly familiar with the difficulty that had attended this question at the common law. They knew that it had all arisen from the fact that the offense was not committed entirely in any county. They knew in what manner it had been remedied. Now assuming that they knew all this, and that in the clause relied on they had a distinct intention of re-opening this question, reversing the decision which had been so long made, and settling the matter definitely in favor of the other county, would it not be imputing to them the most unpardonable stupidity to say that they attempted to do this by simply re-asserting the general rule of the common law that the offense should be tried in the county where it was committed? It would have been just as wise as it would for the parliament in the time of Edward VI., for the purpose of removing the difficulties on this subject, to have enacted that in all such cases thereafter occurring, the offense should be tried in the county where it was committed. People would have laughed at the absurdity of such a statute for such a purpose.

What then was the intention of this clause? It seems to me it must have been one of two things. The rule was either stated in this general form, upon the assumption that when it came to be applied to an exceptional case, where the offense was committed partly in two counties, it would be competent for the legislative power to provide that it might be prosecuted in one or in either of them, as being the only possible application which the rule could have: or, if it intended to fix imperatively one of the counties in such a case, as the place of trial, the language employed can only be accounted for on the theory that it was assumed by the framers that for the purposes of punishment it had long been settled that the county where the death happened was to be deemed the one where the offense was committed. I am not prepared to say that it is not capable of the former construction. But if it is to be assumed that the clause fixes imperatively upon one or the other of the counties, then I think it must be held to be the one where the death happens. I am aware that a contrary decision was made in *Riley vs. The State*, 9 Humph., 646. But I am utterly unable to do what

the court did in that case, discover an intention to change the law upon this subject as it had been settled for several hundred years, by merely re-enacting the general rule of the common law. On the contrary if that was the intention, I am entirely unable to account for the fact that intelligent men, in view of the history of the question, should have employed the language they did. If it is so clear, as the court there assume, that the offense is committed in the county where the blow is struck, it seems strange that so serious a doubt should have arisen at the common law, and still stranger that the parliament of England, in removing that doubt, should have fixed on the county where the death happened, as the proper place for trial.

On the whole, I am forced to the conclusion that there is nothing in the constitutional provision which invalidates the statute on this subject, and that the defendant was properly indicted and tried in Grant county.

The second question was, whether it was the duty of the circuit court of Grant county to transmit the case for trial to Clark county, on the application of the defendant, and whether, if it had done so, the circuit court of the latter would have had jurisdiction of it.

The application of the defendant on which this question was predicated, was not made under the general statute allowing a change of venue for cause, but it was claimed under the same constitutional provision already considered, that he had an absolute right to be tried in Clark county. It seems therefore but a different presentation of the same question. For, assuming that the statute authorizing an indictment and trial in either county is valid, it then becomes a case where the two courts had concurrent jurisdiction, and the one first attaching became exclusive. No other court could acquire any jurisdiction of that case, except by a change of venue according to law, and that extends only to a change to some adjoining county. If the argument of the defendant upon the constitutional provision was correct, then he was improperly indicted in Grant county, and the court, instead of sending it to Clark county, should have dismissed it for want of jurisdiction. If incorrect, then the ground of

his application, of course, fails. It was therefore not the duty of the circuit court to have granted that application.

The third question is, "whether the indictment was sufficient in law to warrant a conviction and judgment thereon." No other question was made on the argument here, as to its sufficiency, except those already discussed. We suppose therefore this general question was intended to have reference to those points, as it should hardly be assumed that we are to examine the indictment critically to see if there are any possible objections not presented or relied on.

Understanding this as based upon the others, we therefore answer the first and third questions certified to us in the affirmative, and the second in the negative. Let this be certified accordingly to the circuit court, and an order entered that the defendant appear at the next term of the circuit court of Grant county to receive his sentence.

DIXON, C. J., dissented.