In re F. S. Eldred.    In re Oliver B. Ford.

In re F. S. Eldred.    In re Oliver B. Ford.

Habeas Corpus. *(1) What questions raised by the writ.*
Dams in Navigable Streams. *(2) Indictment of unauthorized dam; what averments material. (3) In what county indictment must be found. (4) What magistrate empowered to arrest and examine persons charged with maintaining such dam.*

1. When a prisoner is held by legal process, the writ of *habeas corpus* raises only the question of the jurisdiction of the court or officer to issue the process of arrest.

2. A dam not authorized by law, obstructing a public highway by water, is a public nuisance *per se;* and, in an indictment for its maintenance, averments of injurious effects caused by it are immaterial.

3. If such dam were on the confines of two counties, it might probably be indicted in either, under sec. 7, ch. 172, R. S. 1858 (sec. 4618, R. S. 1878); perhaps if it were within one hundred rods of the county line. But, under our state constitution (art. I, sec. 7) and existing legislation, such a dam, more than a hundred rods from a county line, can be indicted in its own county only; although it produces in another county injuries which would found a private action.

4. On a complaint before an examining magistrate, of the maintenance of such a dam in another county, by reason whereof injuries result to the inhabitants of his county, such magistrate has no authority to order the persons charged with maintaining it to be arrested and brought before him for examination.

TAYLOR, J., dissents. ORTON, J., took no part.

CERTIORARI to the Judge of the Circuit Court for *Rock* County.

On the 20th of December, 1878, George C. Smith made a complaint in writing, under oath, before H. A. Porter, Esq., a justice of the peace in and for Jefferson county in this state, alleging, in substance, that Judd M. Cobb, *F. S. Eldred, Oliver B. Ford,* and others named, did, on the 1st of September, 1878, and on divers other days before and since, in said county, unlawfully keep and maintain, and were still so unlawfully keeping and maintaining, a certain dam upon a part of section 21, town 4 north, range 12 east, in Rock county, Wisconsin, and across Rock river, which flows through Jefferson and thence into Rock county. The complaint then contains allegations, showing that Rock river is navigable in law and in fact; describes the dam so maintained by defendants; and avers that they unlawfully maintain it more than six feet, to wit, seven feet, above the ordinary height of water in said river,[1] and that it is without any slide or chute for the passage of rafts or the ascent and descent of fish in the stream, and also without any lock. It is then alleged that, by reason of said dam, the waters of said river had been, ever since said September 1, 1878, set back in said stream, and into Lake Koshkonong, a shallow lake in Jefferson county, through which Rock river flows, and over the banks of said river and lake, and over the surface of large tracts of land in said Jefferson county adjoining said lake and river, and over certain

[1] Ch. 333 of 1851 forbids raising said dam "more than six feet above the ordinary height of water in said stream," and imposes various conditions on its maintenance at that height.—REP.

In re F. S. Eldred.   In re Oliver B. Ford.

highways and common roads in said county, so as to prevent the use of said roads by the people of the state; and that the vegetable and animal matters brought down the channel of said river by the natural flow of its waters, were lodged in the channel of said river and the bed of said lake, so as to become offensive and nauseous, and the waters in said county became stagnant and corrupt, and the lands therein overflowed and marshy, and filled with noxious weeds and decayed vegetable and animal matter, to the great damage and common nuisance of all citizens of the state residing in the neighborhood, or passing along said public roads. It is further alleged that, by the maintenance of said dam, defendants were unlawfully flowing a large quantity of land in said county without the consent of the owners; and that they were unlawfully raising the water of the river, to the injury of certain upper mills prior in right. It is also alleged that the placing of a dam across said river on said section 21, not raised more than six feet above the ordinary height of water in said stream, and high enough to make the water useful in propelling machinery, or to make the right to use it salable, would necessarily flow lands adjoining said lake. The complaint therefore prayed that said defendants might be arrested and dealt with according to law.

Upon this complaint, Justice Porter issued a warrant to the sheriff of Jefferson county, commanding him to arrest said defendants, and bring them before him, etc. Having been arrested on such warrant, the defendants *Eldred* and *Ford* sued out writs of *habeas corpus* from Judge Conger, judge of the circuit court for Rock county. In their petitions they alleged, among other things, that the dam in question was situate in Rock county, more than two miles distant from any portion of Jefferson county; and also that its erection and maintenance were authorized by law. The sheriff having made return to the writ in each case, setting forth the complaint and warrant of arrest, the petitioners filed answers

traversing the complaint; and the sheriff demurred thereto. Considerable evidence was taken upon the hearing, which need not be stated here.

After hearing counsel for the parties, Judge Conger made an order in each case, reciting that it appeared that the petition- er was legally in custody of the sheriff of Jefferson county and not entitled to his discharge, and remanding him to such cus- tody. Afterwards, on the 4th of February, 1879, a writ of *certiorari* was issued out of this court in each case, to bring up the [proceedings had therein before Judge Conger; and his return thereto set forth in full the facts and proceedings above mentioned.

*Wm. Ruger*, for the relators, contended that the circuit judge erred in holding that he could only consider the question of the jurisdiction of the justice, and in disregarding for that reason material allegations of the relators' answers, which were admitted by the demurrer. In support of this view, counsel examined secs. 3407–8, 3425–9, and 3448, R. S., and contended that under them the relators were entitled to deny any of the material facts set forth in the officer's return, and allege any fact to show that there was no legal cause for their imprison- ment; and that it was the duty of the circuit judge to hear the proofs upon the issues thus raised, and to discharge the relators if no legal cause for their imprisonment was shown. Counsel conceded that secs. 3427–9 limit the inquiry on *habeas corpus* to jurisdictional questions in the great majority of cases; and that in this case, if an *examination* had been had before the justice, and a commitment issued, upon which the petitioners were restrained, sec. 3429 would probably have thus limited the inquiry; but that in the absence of any such examination the statutory rule was otherwise. See *People v. Martin*, 1 Parker, 187, and cases there cited; *People v. Tomp- kins*, id., 224; *People v. Richardson*, 4 id., 656. Counsel further contended, 1. That it did not appear that the relators were guilty of any offense. In support of this view he argued

that the only offense against the public charged was the unauthorized maintenance of a dam in a navigable stream; that if the dam in question is authorized by law, the relators cannot be guilty of an offense against the public in maintaining it, whatever injury may result from it (*Stoughton v. The State*, 5 Wis., 291; 34 Barb., 494; 6 Ind., 165; Wood on Nuisances, § 746); and that the averments of the answer, and the statutes therein relied upon, show authority to maintain the dam. In this connection counsel also argued that the petitioners were merely charged with maintaining, since a certain date, a nuisance theretofore created; and that in such a case it was necessary to allege and prove *notice* to them of that which constituted the nuisance. Wood on Nuis., §§ 77, 850; Angell on W. C., §§ 402–3; Addison on Torts, 242. 2. That this was a common-law prosecution, prohibited by statute. R. S., §§ 1598, 1607, 4634. 3. That the offense, if any, was committed in Rock county, and therefore the arrest and restraint, under a warrant issued by a justice of Jefferson county, were illegal. In support of this view, he contended that the nuisance, if any, was the dam itself, and the offense, if any, consisted in the maintenance of the dam (4 Black. Com., 167; Bac. Ab., "VESNE OR VENUE (D)" and "NUISANCE;" 2 Colby's Cr. Law, 72–3; Whart. Cr. Law, §§ 2362, 2418–20; 1 Russ. on Crimes, 318; Washb. Man. of Cr. Law, 85; 3 Greenl. Ev., § 184; 1 Bish. Cr. Law, §§ 392, 557, 560; 2 id., § 848; 1 Bish. Crim. Pro., §§ 51, 57; Wood on Nuis., §§ 21, 23, 599, 602, 607, 617, 771; *Queen v. Cotton*, 102 E. C. L., 202; *M. & M. Railroad Co. v. Ward*, 2 Black, 485; *State v. Babcock*, 1 Vroom, 29; *State v. Graham*, 15 Rich., 310; *Wertz v. The State*, 42 Ind., 161); and that the indirect effects of the dam, at places remote from it, if they could be considered at all in such a prosecution, could be considered only as *evidence* that the dam was in fact a nuisance. Two classes of cases are relied on as supporting the position that the ill effect of the unlawful act constitutes the offense or an element of it, and

hence, that the locality of any such effect locates the offense or an element of it. In the case of murder it was anciently considered that the infliction of the wound and the resulting death were both elements of the offense. When, therefore, the wound and death occurred in different counties, under the rule that the criminal must be tried where the offense was committed, the murderer could not, at common law, be tried in either county. This rule, however, was soon modified, so that death was not considered an element of the crime, but merely evidence that the wound given was of such a character as to constitute the crime. Chitty's Crim. Law, 177–8; Bish. Crim. Pro., § 51, and notes 4, 6, and §§ 52, 54. It is by force of statutes only that the criminal may now be tried in the county where the death occurs. Bish. Crim. Pro., § 52, 57. In the cases of sending threatening letters from one place to another, and sending a libel from one place and publishing it in another (which are now *by statute* punishable in either place), the offense consists of one continuing act, begun in one place and completed in another. The rule that offenses are triable where committed is affirmed by our constitution and statutes. Const., art. I, sec. 7; R. S., sec. 4679; and see 1 Bish. Cr. Pro., § 52. Under this rule, an offense must be *complete* in one jurisdiction, or it cannot be tried anywhere; and if an exception to this rule were to be made, such an offense should, on principle, be tried in the place of the act, rather than that of the effects, the former place being fixed and certain, and the latter variable. In *criminal* actions, the cause of action consists wholly in the culpable cause, and effects are material as evidence only, unless made material by statute.

For the respondent, there was a brief by *I. W. & G. W. Bird*, and oral argument by *G. W. Bird*. They contended, 1. That on *habeas corpus* only jurisdictional defects can be inquired into (*In re Blair*, 4 Wis., 522; *In re O'Connor*, 6 id., 288; *In re Perry*, 30 id., 268; *Hauser v. The State*, 33 id.,

In re F. S. Eldred.    In re Oliver B. Ford.

678; *In re Crandall*, 34 id., 177; *In re Semler*, 41 id., 517; *In re Pierce*, 44 id., 411), and only such jurisdictional defects as are alleged in the petition (*Rose v. Terrell*, 25 Wis., 563); and that there is nothing in sec. 3425, R. S., to alter the rule. 2. That the warrant in this case, reciting the substance of the complaint, charges a criminal offense committed by the petitioners with others. It charges, (1) The flooding, obstruction and destruction of highways, which constitutes a public indictable nuisance. Wood on Nuis., §§ 250–268, 291, 846; 1 Russell on Crimes, 347 et seq.; Wharton's Am. Crim. Law, §§ 2502–5; Wharton's Prec., 693–7; Roscoe's Crim. Ev., 540; Barbour's Crim. Law, 238; 2 Archb. Crim. Pr. & Pl., 985; *State v. Phipps*, 4 Ind., 515; *State v. Virt*, 3 id., 447; *State v. Miskimmons*, 2 id., 440; *People v. Cunningham*, 1 Denio, 524; *Carpenter v. Mann*, 17 Wis., 155; *Sheboygan v. Railroad Co.*, 21 id., 667; *Harper v. Milwaukee*, 30 id., 365; *Pettibone v. Hamilton*, 40 id., 402. (2) The obstruction of a navigable river, which is admitted to be a public indictable nuisance. (3) The causing of noxious vapors, noisome smells, and injury to the neighborhood, which is a public indictable nuisance. Wood on Nuis., §§ 75, 469, 494; 1 Russell on Crimes, 319; Wharton's Am. Cr. Law, §§ 2370–2, 2407; 2 Archb. Cr. Pr. & Pl., 607 et seq.; Roscoe's Cr. Ev., 729, 731; *Luning v. The State*, 1 Chand., 178; *State v. Douglass*, 4 Wis., 387; *Munson v. The People*, 5 Parker, 17; *Comm. v. Webb*, 6 Rand., 726. 3. That the proceeding by indictment was not excluded by the statutory provisions cited on the part of the relator. To have that effect, the statute must contain negative words excluding the common-law remedy. *Wetmore v. Tracy*, 14 Wend., 250; *Platt v. Sherry*, 7 id., 236; *Stafford v. Ingersol*, 3 Hill, 38; *Renwick v. Morris*, 7 id., 575; *Behan v. The People*, 17 N. Y., 516; *Candee v. Hayward*, 37 id., 653; *Goodrich v. Milwaukee*, 24 Wis., 422; *Orton v. Noonan*, 29 id., 541. Those sections of the revised statutes which are claimed to provide a penalty for the offense recited in the war-

rant (secs. 1598, 1607), are not aided in this respect by sec. 4634, which declares that "all punishments prescribed by the common law for any offense specified in the statutes of this state, and the punishment whereof is prescribed therein, are prohibited." That section is taken from the New York statutes, and the word "offense" is to be construed as meaning only purely criminal offenses, such as are treated of in the title in which it appears. *McHugh v. Timlin*, 20 Wis., 487; *Draper v. Emerson*, 22 id., 147; Potter's Dwarris, 278, note. Besides, the offense recited in the warrant is not specified in the statutes. Wharton's Am. Crim. Law, § 373; *Comm. v. Church*, 1 Barr, 107; *Comm. v. Van Sickle*, Brightly, 69. 4. That the prosecution was properly commenced in Jefferson county. 1 Bish. Crim. Pr., §§ 50–61; Angell on W. C., §§ 520, 570; *People v. Rathbun*, 21 Wend., 509; *People v. Adams*, 3 Denio, 190; *People v. Griffin*, 2 Barb., 427; *Ruckman v. Green*, 9 Hun, 225; *State v. Lord*, 16 N. H., 357; *U. S. v. Davis*, 2 Sumn., 482; *Pilgrim v. Mellor*, 17 Am. Law Reg., N. S., 729; *Rex v. Coombes*, 1 Leach, C. C., 388; *Stoughton v. The State*, 5 Wis., 291; *State v. Pauley*, 12 id., 537.

*J. B. Cassoday*, of counsel for relators, in reply, argued among other things, 1. That so much of the warrant as alleges an overflow of the lands or an injury to the mills of private owners, tends merely to show a private injury or nuisance, and a right of private action on the part of such owners under ch. 137, R. S.; that, so far as a public nuisance works a private injury, it is the subject of a private action, but the private injury or nuisance constitutes no part of the public offense, and the allegation and proof of it would not aid a public prosecution; that while the legislature may permit an act which would otherwise be a public nuisance (as the building of this dam), yet, if such authorized act should work a private injury or nuisance, such permission would probably not take away the right of private action (Cooley on Torts, 616; Wood on Nuis., § 617); that if the private action is

merely for damages, it may be brought in the county where the overflowed lands are located, the subject of the action on the case, or at least a part of it, being the land damaged, but a bill in equity to abate the dam, the subject of the action being the nuisance itself, must be brought in the jurisdiction where the nuisance is situated (*Oliphant v. Smith*, 3 Penn., 180); and that, wherever damages are claimed for the consequential effects of an act, those effects are in part the subject of the action, and are therefore to be considered in determining the jurisdiction; but that the venue of a public prosecution *to punish the act itself* is to be determined by the place of its commission. 2. That it appeared from the record that the relator had not committed any crime. In support of this view, counsel argued, among other things, (1) That the facts admitted by the demurrer show the dam to have been built and maintained by express legislative permission; and that its building and maintenance could not therefore create a *public* wrong or nuisance. *Stoughton v. The State*, 5 Wis., 291; *Comm. v. Reed*, 34 Pa. St., 275, 281–2; *Danville, etc., Railroad Co. v. Comm.*, 73 id., 29, 38; *People v. Gas Light Co.*, 64 Barb., 55, 70; *People ex rel. Chope v. Plank Road Co.*, 37 Mich., 195; Cooley on Torts, 615. (2) That the facts admitted by the demurrer also show that the dam has not been maintained at an unauthorized height. But if that were otherwise, and if it appeared, as alleged, that the dam was maintained at a height one foot in excess of the authority granted, then the maintenance of such excess would constitute an unauthorized obstruction of the public highway, and would constitute the crime, irrespective of the injurious consequences elsewhere, and such crime would be complete in Rock county, and the courts of that county, and not of Jefferson, would have jurisdiction. *People v. Vanderbilt*, 26 N. Y., 287; *Stoughton v. The State, supra; Wis. R. I. Co. v. Lyons*, 30 Wis., 61, 66–7; Wood on Nuis., §§ 818, note, 844–5; *State v. Sturdivant*, 21 Me., 9; *Comm. v. Lyons*, 1 Penn. Law Jour., 497; *M. & M. Rail-*

*road Co. v. Ward*, 2 Black, 485. Counsel distinguished the case of *State v. Lord*, 16 N. H., 357, where the obstruction of the highway was the immediate and inevitable result of the dam in the ditch by the side of the road, and was held to be the gist of the action, the allegations as to the dam being treated as surplusage. (3) That the warrant does not state whether the highways therein mentioned were constructed before or since the dam was built at its present height, nor whether they were in any way affected by the maintenance of the dam at a height of one foot in excess of the authority granted, nor where they are located with respect to the river or lake. Highways over Rock river, or along the river or lake, between high and low water mark, could no more be lawfully constructed without legislative permission, than could the dam. Wood on Nuis., § 603, note; *Kear v. Stetson*, 5 Pick., 492, 494; *Arundel v. M'Culloch*, 10 Mass., 70; *Barnes v. Racine*, 4 Wis., 454.

RYAN, C. J. These cases involve the same questions. One of them was submitted on the argument of the other, and they will be considered together.

Upon the return of the sheriff to the writs of *habeas corpus*, the prisoners, who are relators here, put in traverses of the recitals of the complaint in the warrant issued by the justice of the peace, going to the merits. To these the state demurred. And the learned counsel for the relators now insist that this court must pass upon the merits as raised by the demurrers to the traverses. The learned circuit judge before whom the writs of *habeas corpus* were heard, is understood to have declined consideration of the merits, and to have passed upon the question of jurisdiction only. In this he was undoubtedly right. When a prisoner is held by legal process, the writ of *habeas corpus* does not operate, so to speak, by way of change of venue from the court or officer issuing the process of arrest, to the court or officer issuing the *habeas corpus*.

The latter writ, in such a case, raises only the question of jurisdiction of the court or officer to issue the process of arrest. If anything can be settled by a long and uniform series of decisions in this court, this is.  *Re Booth,* 3 Wis., 1; *Re Booth and Rycraft,* id., 157; *Re Blair,* 4 Wis., 522; *Re O'Connor,* 6 Wis., 288; *Re Falvey,* 7 Wis., 630; *Re Boyle,* 9 Wis., 264; *Re Tarble,* 25 Wis., 390; *Re Perry,* 30 Wis., 268; *Re Crandall,* 34 Wis., 177; *Re Semler,* 41 Wis., 517. This rule is not disturbed, but is understood to be recognized in effect, in the late case of *Re Pierce,* 44 Wis., 411.

This rule excludes from the consideration of this court all the questions discussed at the bar, except the jurisdiction of the justice of the peace of Jefferson county, as an examining magistrate, to entertain a complaint against the owners of the dam in Rock county as a nuisance, involving the jurisdiction of the circuit court of Jefferson county, of an information or indictment against the dam in Rock county.

This question was in *Stoughton v. State,* 5 Wis., 291, but is not noticed in the briefs of counsel or in the opinion of the court.   The judgment against Stoughton was reversed on another ground.   And so that case neither expresses nor implies any disposition of the question here.

The recital of the complaint in the warrant issued by the justice of the peace of itself suggests the dangerous ground on which the jurisdiction asserted is supposed to rest.   This is not the fault of the complaint, which is well drawn.   It is an inherent difficulty of the case.

If the dam in Rock county, as it is, were there by express authority of statute, it could not be indicted for overflowing lands and thereby creating sickness, etc., in Jefferson county. This is expressly decided in *Stoughton v. State.*   The complaint therefore sets out with the charge that the defendants unlawfully maintain the dam across Rock river from shore to shore; that the river is *de jure* and *de facto* navigable above and below; that the dam has no slide or chute for the passage

of rafts, or for the ascent and descent of fish, and no lock for the passage of vessels.

The word " unlawfully " excluding permission of the legislature, the complaint so far is a complete charge that the dam is maintained in violation of public law, and is therefore a public nuisance in Rock county, indictable there as such, without reference to injuries which it may cause in Jefferson county or elsewhere. R. S. 1858, ch. 41, sec. 2; R. S. 1878, sec. 1596; *Barnes v. Racine*, 4 Wis., 454; *Enos v. Hamilton*, 24 Wis., 658; *Stevens P. B. Co. v. Reilly*, ante, p. 237.

The complaint having thus charged that the dam is a public nuisance *per se* in Rock county, proceeds to add that, " by means of its being maintained," the water of the river is held back in Lake Koshkonong, in Jefferson county, overflowing and damaging lands and highways there, creating nauseous smells injurious to health, and causing other injuries in that county.

It may be taken for granted that these averments would make a good complaint in a private action for injury suffered from the maintenance of the public nuisance. The public only can prosecute a public nuisance, for its general public injury. But an individual may maintain an action for damages caused by the nuisance, peculiar to himself, and not common to the public. In these private actions the nuisance is averred, with a *per quod* setting up the peculiar injury to the plaintiff. The rule is, perhaps, nowhere better stated than by SHAW, C. J., in *Atkins v. Bordman*, 2 Met., 457. " There is another class of cases where, although the act complained of may not be unlawful, or, if unlawful, not an infringement of any right of the plaintiff, no action can be maintained without alleging and proving a special and particular damage to the plaintiff; and the damages to be recovered are confined to an indemnity for the loss thus proved to have been sustained. The plaintiff sets forth the act done, and alleges that by means thereof he sustained the damage complained of, technically

called declaring with a *per quod*. As where the plaintiff complained that while he was proceeding along a navigable creek with his barge laden, etc., the defendant obstructed the creek, *per quod* the plaintiff was compelled to carry his goods around, at a great expense. In such case the action lies for the special damage immediately occasioned by the obstruction; but it would not lie for the obstruction itself, without special damage, because, although it was an infringement of a public right, and so was unlawful, yet it was not an infringement of the peculiar right of the plaintiff. *Rose v. Miles*, 4 M. & S., 101. So for special damage occasioned by obstructing a highway. *Greasly v. Codling*, 2 Bing., 263. So by a proprietor of land through which a water-course runs, against a proprietor higher up, where the *gravamen* of the complaint against the upper proprietor was, that, by damming up the water above, it came with greater impetuosity, and thereby injured his banks. *Williams v. Morland*, 2 Barn. & Cress., 910; *S. C.*, 4 Dowl. & Ryl., 583."

This private action is, therefore, not for the nuisance, but for the injurious consequences of the nuisance. It is, of course, local. And when, as in this case, the cause of the injury is in one county, and the land injured in another, the question whether, at the common law, the venue must be in the county where the land injured lies, or may be laid in either county, is left in some doubt by the cases, with perhaps the weight of authority in favor of the general rule, that an action affecting realty must be brought in the county where the realty lies. It is not necessary here to pass upon that question, and the cases will not be reviewed. They are very fully stated in *Worster v. Winn. Lake Co.*, 5 Foster, 525, and in *Pilgrim v. Mellor*, 1 Bradw., 448, in which opposite conclusions are reached. The doubt may perhaps be solved in this state by sec. 2619, R. S., which provides, that actions for injury to real property shall be brought in the county in which the subject of the action, or some part thereof, is situated   Appar-

ently the land injured is the sole subject of the action, exclusive of the cause of the injury; the cause being rather the ground of the action than the subject of it.

The venue of local actions rests entirely, in the absence of statute, upon the authority of adjudged cases. But the venue of indictments rests upon fundamental law, as old as Magna Charta, entering into the provision of the constitution of the state. The decisions of courts upon the former can, therefore, have little or no influence on the latter.

A nuisance may be such *per se*, being in itself unlawful, and indictable without averment of injurious consequences, as unauthorized obstructions of highways by land or by water. So a nuisance may be such by its consequences only, the thing being harmless and lawful *per se*, but becoming a nuisance by its injurious effects; as lime-kilns or glue factories. *Slight v. Gutzlaff*, 35 Wis., 675. The former may, perhaps, be called a nuisance in law; the latter, a nuisance in fact.

The nuisance here being stated to be a nuisance *per se*, or a nuisance in law, while what comes under the *per quod* would be the *gravamen* of a private action for private injury, it appears to be surplusage in an indictment. If an indictment in the very words of the complaint recited in the warrant before the court, against the proprietors of the dam in question, were found and tried in Rock county, proof of the averments showing it to be a public nuisance *per se* would entitle the prosecution to verdict and judgment without evidence of the averments under the *per quod*. For the dam would be a public nuisance without them, and they could not tend to aggravate its character. And it is difficult to comprehend why the venue of an indictment should have any effect in the evidence necessary to support it, except that evidence of the *locus in quo* might sustain an indictment in one county and defeat it in another. If an indictment should be found in this proceeding in Jefferson county, the same evidence would apparently support it there as in Rock county. And so the aver-

ments under the *per quod* are apparently immaterial to change the venue of an indictment from Rock to Jefferson.

Indeed, it seems to have been formerly understood, that averments in an indictment of collateral facts happening in another county were void. *Lady Russell's Case*, Cro. Jac., 17.

The averments under the *per quod*, and the argument that they give jurisdiction of an indictment in Jefferson county, appear to confound the private remedy for consequential injury to private right with the public remedy for public wrong against the nuisance *per se* itself; not for its injurious consequences, but because it has no right to be. Indeed, this was the effect of the argument in support of jurisdiction in Jefferson county. For it was contended that the dam might be indicted in any county where it caused injuries like those averred in Jefferson county; that is, that an indictment would lie against the thing, wherever a private action would lie for the consequences of the thing. The radical difficulty in the argument is, that an indictment is directed against the thing, as an offense against the public, while the private action at the common law goes upon the consequences of the thing only, for the recovery of damages for private injury. The maintenance of the nuisance is local in the county where it exists, though its effects may extend beyond the county. The dam here is none the less in Rock county, and subject to the jurisdiction of the circuit court of that county, though its injurious effects should extend to every county in the state through which Rock river runs.

It was said that though the complaint recited in the warrant perfectly describes a public nuisance *per se* in Rock county, yet the *gravamen* of the charge is what is called a nuisance in Jefferson county. It is difficult to understand how the effects of a public nuisance *per se* can create a separate nuisance; how a thing can be two public nuisances at once. Even in the case of a nuisance not unlawful in itself, but made so by its injurious effects, it is the thing itself which is the nui-

sance, not the injurious effects.   They are the only reason why the thing is a nuisance, the evidence of its being a nuisance. It is equally difficult to understand how immaterial averments should constitute the *gravamen* of a complaint or indictment, and the averments of the crime itself be held to be immaterial or only introductory.   In the case of an indictment as for a nuisance of a thing lawful in itself, averments of the character introduced here under the *per quod* would be material to establish the nuisance.   But here they are immaterial.

It was argued that the nuisance was partly in both counties, incomplete in either.   That view does not appear to be sound in reason or on authority.   The complaint shows that the dam is the nuisance, complete in Rock county; complete without reference to its effects in Jefferson county, or elsewhere.   It is the *corpus delicti*.   Its consequences are accidents, unaffecting its character.   But if the position were correct, it could not affect the judgment of this case.

The vexed question whether and where, at the strict common law, unaided by statute, a crime partly committed in different counties could be prosecuted, was discussed at the bar with great learning and ability.   Some of the late English text writers say that it could be prosecuted in either county. Their accuracy is more than questionable.   Indeed, they appear to be contradicted by the recitals in the statute 2 and 3 Edw. 6, ch. 24, which appears to be authoritative on that point.   "Where it often happeneth and cometh in ure in sundry counties of this realm, that a man is feloniously stricken in one county, and after dieth in another county, in which case it hath not been founden by the laws or customs of this realm, that any sufficient indictment thereof can be taken in any of the said two counties, for that, by the custom of this realm, the jurors of the county where such party died of such stroke, can take no knowledge of the said stroke, being in a foreign county, although the same two counties and places adjoin very near together; ne the jurors of the county

where the stroke was given, cannot take knowledge of the death in another county, although such death most apparently come of the same stroke: So that the King's majesty, within his own realm, cannot, by any laws yet made or known, punish such murderers or manquellers, for offenses in this form committed and done; nor any appeal at some time may lie for the same, but doth also fail, and the said murderers and manquellers escape thereof without punishment, as well in cases where the counties where such offenses be committed and done, may join, as otherwise where they may not join. And also, it is a common practice amongst errant thieves and robbers in this realm, that after they have robbed or stoln in one county, they will convey their spoil, or part thereof so robbed and stoln, unto some of their adherents into some other county, where the principal offense was not committed ne done, who, knowing of such felony, willingly and by false covin receiveth the same: In which case, although the principal felon be after attainted in one county, the accessary escapeth by reason that he was accessary in another county, and that the jurors of the said other county, by any law yet made, can take no knowledge of the principal felony ne attainder in the first county, and so such accessaries escape thereof unpunished, and do often |put in ure the same, knowing that they may escape without punishment." The statute proceeds to enact that when one is stricken or poisoned in one county, and dies in another, then an indictment found in the county where death happens shall be good, as if the stroke or poisoning had been in it. It further enacts, that when any felony shall be committed in a county, and one shall be accessary to the felony in another county, the accessary may be indicted in the county in which he was accessary, as if the felony had been committed within it. Doubtless this statute came to us with the common law; but so far as it bears on the question here, it is confined to homicide only. Some text writers apply the rule of the statute to nuisances, in the light in which the nuisance

here is now considered. But their text does not seem to be supported by authority. No English statute, prior to the revolution, applying the rule to nuisances, is cited or known. A very learned and interesting discussion of the general question will be found in *Gawen v. Hussee*, Dyer, 38 *a*.

Such being the state of the common law when the constitution of the state was adopted, the next and main question is the construction of the clause of that instrument on the subject. In England a distinction seems to have been made between felonies and misdemeanors. Such a distinction cannot be upheld here, because the clause in the constitution covers all prosecutions by indictment or information. It provides that the accused.shall be entitled to a trial by a jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law. The construction of this provision, as it bears upon this case, appears to be a question of first impression in this court.

*State v. Main*, 16 Wis., 398, so far as it has any bearing here, merely holds that the provision in question has no application to crimes against the state, committed outside of the state by citizens of the state. *State v. Pauley*, 12 Wis., 537, was a case of homicide, upholding a statute very similar to ch. 24, 2 and 3 Edw. 6, and affirming, rather than disaffirming, the view here taken of the common law and of the English statute.

Doubtless, the rule of the strict common law was defective in some cases, as pointed out in the statute of Edw. 6. Crimes may sometimes be composed of several acts, which may be done in different jurisdictions, and these should be punishable somewhere. The difficulties which might arise under the common law, appear to have been in the minds of the framers of the constitution. For the clause under consideration does not provide, as the common law did, for trial in the county in which the offense is committed; but for trial in the county or

district wherein the offense is committed, which county or district shall be previously ascertained by law. This very peculiar language is obviously designed to avoid the difficulties which had arisen at the common law, without depriving the accused of trial by a jury of the vicinage. Hitherto this clause appears to have received no construction in this court.

In *State v. Pauley*, the late Mr. Justice PAINE apparently overlooked the peculiar language of the constitution, and not unnaturally. That was a case of homicide, where the wound had been inflicted in one county, and death had ensued in another; the indictment being found in the county of the death. The court held the common-law meaning of the word county, in the clause under consideration, as controlled by the statute of Edw. 6; and therefore sustained the state statute authorizing the indictment where it was found, and the indictment.

In the later case of *State v. Main*, the same learned and lamented judge makes no express comment on the language of the constitution; but it appears to have been in his mind, that the legislature might establish a district within the state, for the trial of offenses committed without the state.

The words county or district, as used in the clause, must both be held to have a meaning and a use. It is unnecessary here to give an authoritative construction of the whole scope of the clause, but only so far as its construction is involved in the question under consideration. The legislature takes express power to provide by statute for trial of offenses in · the county or district in which the offenses shall have been committed. Whether the legislature could appoint a district greater or less than the county, for trial of a crime complete within a county, is very doubtful, but is a question not in this case. But the legislature clearly takes power to provide for the trial of crime partly committed in several counties, in one or any of those counties. So it apparently takes power to provide for a district, composed of two or more counties, for the trial of crime, when it may be doubtful in which of the

counties of the district the crime is committed. Possibly, the history of the difficulties at the common law, of sometimes finding a venue for the prosecution of crime, and the peculiar language used, should be held to limit the application of the clause to the two classes of cases suggested. That is not determined here. But those cases appear to comply with all the language of the clause; perhaps exhaust the purpose and force of the clause.

This construction has the sanction of contemporaneous ex-position. For secs. 7, 8 and 9, ch. 172, R. S. 1858, on which Mr. Justice PAINE comments in *State v. Pauley*, are found in ch. 141, R. S. 1849, and *State v. Pauley* may be taken as an affirmance of the legislative power to pass them.

Sec. 7 provides, that offenses committed on the boundary line of two counties, or within a hundred rods of it, may be prosecuted in either county. Sec. 8 provides, that when a wound is given or poison administered in one county, and death ensues in another, the prosecution may be in either. Sec. 9 provides, that when a wound is given or poison admin-istered within or without the state, and death ensues in any county of the state, the crime may be prosecuted in that county. These sections were framed by very intelligent gentlemen, some of them being distinguished members of the bar, in the same year in which the constitution was adopted. And they are plainly founded on the clause of the constitution in ques-tion. If the clause in the constitution had followed the strict common law, these sections would apparently have been in-valid. This was felt by Mr. Justice PAINE in *State v. Pauley*, and led him to invoke the aid of the statute of Edw. 6.

If a dam, being a public nuisance, were on the confines of two counties, it might probably be indicted in either, under sec. 7, ch. 172 of 1858; perhaps, if it were within a hundred rods of the county line. Possibly it would be competent for the legislature to provide, that a dam situate in one county, but creating injurious effects in several, might be indicted in

either. That question is not determined here, because there is no such statute. But, in the absence of such legislation, a dam more than a hundred rods from a county line can be indicted in its own county only.

It is within the knowledge of one of the associate justices of this court, that an eminent circuit judge, who now adorns the bench of the supreme court of the District of Columbia, held that his court in Waukesha county had no jurisdiction of the indictment of a dam in Racine county, asserted on grounds similar to those urged here; and that, soon after, the legislature rejected a bill introduced to give such jurisdiction to the circuit courts.

The briefs of counsel on both sides display much learning and research. But the cases elsewhere bearing on the question are few, and give little aid to this court in passing upon what is mainly a constitutional question.

In *State v. Lord*, 16 N. H., 357, the dam was in Maine, and the injurious effects in New Hampshire. And the court holds the indictment in New Hampshire good, although the dam was out of its jurisdiction. The opinion, though written by a very able judge, is curt and unsatisfactory. The difficulty of remedy in the case is perhaps its best excuse. But it has somewhat the look of one of the hard cases which are apt to make bad law.

In *State v. Babcock*, 1 Vroom, 29, the nuisance was on the soil of New Jersey, but within the jurisdiction of New York, by compact between the two states; the injurious effects being in New Jersey. And the court adjudges the indictment in New Jersey bad; holding that the jurisdiction of an indictment is in New York. *M. & M. R. R. Co. v. Ward*, 2 Black, 485, is an instructive case on this point, tending strongly to confirm the view of this court.

It would be difficult to find two decisions more directly in conflict than *State v. Lord* and *State v. Babcock*. There might have been more color of right for entertaining jurisdic-

tion in New Jersey than in New Hampshire. Both cases are very clearly distinguishable from one where the nuisance is within the state, and there is one *forum* of undoubted jurisdiction. Neither of the cases proceeds upon statute. And this court is not prepared to say, that a statute authorizing the indictment of one who maintains a nuisance without the state, in a county of this state injuriously affected by it, would not be a valid enactment. Nor is it doubted that a private action would lie in this state for peculiar injury to property here, caused by such a nuisance. *Ruckman v. Green*, 9 Hun, 225.

The case most directly in point is *Commonwealth v. Lyons*, 1 Penn. L. J. R., 497, in which it is held, that an indictment may be found in the county of a dam, which is a nuisance only by its effects in an adjoining county. The decision is in a court of sessions; but the brief opinion is delivered by a very eminent jurist. And the judgment appears to preclude the jurisdiction claimed here in Jefferson county.

*People v. Rathbun*, 21 Wend., 509, and *People v. Adams*, 3 Denio, 190, appear to have no bearing on the question. The former was an indictment for uttering and publishing forged commercial paper. The forgeries were mailed by the defendant in one county to an agent in another, to be there used. The court very properly holds, that the uttering and publishing was in the latter county. The latter of these cases was an indictment for obtaining money by false pretenses. The false pretenses consisted of papers executed in Ohio, and the money was obtained by drafts drawn in Ohio. These were sent to New York by innocent agents; and the money there obtained by the defendant through the agents. The court, no doubt correctly, held that the offense of obtaining the money by the false pretenses was committed in New York, though the papers were prepared in Ohio; and that the personal presence of the defendant in New York, when the money was obtained, was not essential to his guilt. The offense was not in

the preparation of the papers, but in the use made of them. To similar effect is *People v. Griffin*, 2 Barb., 427, where it is held, that a threatening letter mailed in one county to a person in another, is delivered in the latter county, and the writer there indictable.  These cases appear to follow an old and generally recognized rule.  *Butterfield v. Windle*, 4 East, 385. See, however, *Ex parte Smith*, 3 McLean, 121.

*King v. Coombes*, 1 Leach, 388, appears to have proceeded upon the statute of Edw. 6, making the place of death the place of jurisdiction.   *Queen v. Cotton*, 1 Ellis and E., 203, turns entirely upon the construction of a statute giving special local jurisdiction.   *State v. Graham*, 15 Richardson, 310, and *Wertz v. State*, 42 Ind., 161, are cases of variance.  Some other cases were cited, but their bearing on the question is at least very remote.

If the argument for the state were well founded, that the dam in question was a nuisance only by its aggregate effects in different counties, it might possibly be that it could not be indicted in either, for that appears to have been the common law.   And there is no statute authorizing its indictment in either county, as in the case of homicide.

It is proper to remark here that, on the authority of *State v. Babcock* and *Commonwealth v. Lyons*, as well as on principle, where a nuisance which is such by its effects only, is indicted in the county in which it is, its effects in other counties going to show that it is a nuisance may be given in evidence.

Hitherto the liability of the dam to indictment has been considered in an impersonal view.   But it is to be indicted in the persons of the relators and their codefendants, who are liable to punishment for its maintenance.  They are not charged with having personally done anything in Jefferson county. They are charged only with the maintenance of the dam in Rock county, *per quod* injury has ensued in Jefferson county. The sole offense charged against them is in Rock county.  The

·consequences averred in Jefferson county are not even averred to be designed. These ensue by a law of nature, from the act of the relators and their codefendants in Rock county. Their act does not even, in a proper sense, set the waters of the river back in Jefferson county. It only prevents the waters of the river from flowing naturally. The waters which overflow at Lake Koshkonong come from above, and not from below. Assuming the dam to be a nuisance, the defendants are liable for that, but criminally liable only in a county in which they do the act which produces that effect. In the present state of the law, they have a right to invoke the constitution, and to claim a trial in the county wherein their offense has been committed; and no court has right to deny it.

In the administration of criminal law, it is essentially dangerous to adopt new or doubtful theories of jurisdiction. In the absence of statute constitutionally passed, established and ancient ways are safest. A free common-law people ought to be jealous of the right of trial in criminal cases by a jury of the vicinage. One inroad on this right might sanction another, until one of the most sacred safeguards which this country has inherited with the common law from England, might be diminished or frittered away. "The trial by jury, as it existed of old, is *the* trial by jury secured by our national and state constitutions; it is not *granted* by these instruments; it is more — it is *secured*. It is no American invention. Our fathers brought it with them to this country more than two centuries ago; and, by making it a part of the constitution, they intended to perpetuate it for their posterity; and neither legislatures nor courts have any power to infringe even the least of its privileges." Stow, C. J., in *State v. Cameron*, 2 Pin., 490.

The prisoners, who are relators here, were not in the lawful custody of the sheriff of Jefferson county, for want of jurisdiction of the justice of the peace of that county to issue the warrant on which the arrest was made. The orders of the

learned circuit judge of Rock county, remanding them to the custody of the sheriff, are reversed, and the prisoners ordered to be discharged from it.

*By the Court.* — So ordered.

TAYLOR, J., dissents.

ORTON, J., took no part.