KENTZLER VS. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Garnishee.

*(1) Garnishment. (2) Jurisdiction of circuit court to issue execution to another county. (3) What execution must show.*

1. Garnishment in aid of an execution can be maintained only where the execution is *valid.*

2. The circuit court for any county of this state has no authority to issue an execution to another county, except that conferred by statute (sec. 2971, R. S.; sec. 5, ch. 134, R. S. 1858), which authorizes the execution to issue to the sheriff of any county where the judgment is docketed.

3. An execution, to be valid, must show on its face the authority to issue it; and, if issued by the circuit court for one county to the sheriff of another county, it is invalid if it fails to recite that the judgment is docketed in the latter county. *Smith v. Buck*, 22 Wis., 577, explained; and *Sabin v. Austin*, 19 Wis, 421, distinguished.

APPEAL from the Circuit Court for *Milwaukee* County.

On the 13th of September, 1878, an execution issued from the circuit court for Dane county to the sheriff of Milwaukee county. It recited that, in an action in the municipal court for the city of Madison, between *Andrew Kentzler*, plaintiff, and C. S. Hardy, defendant, a judgment was rendered September 1, 1877, in favor of said plaintiff and against said defendant, for $79.90, as appeared by a transcript of said judgment filed and docketed in the office of the clerk of the circuit court for Dane county on September 24, 1877, and that $79.90 was then actually due thereon, besides interest. It then proceeded as follows: "Therefore we command you that you satisfy the said judgment out of the personal property of said debtor within your county; or if sufficient personal property cannot be found, then out of the real property in your county belonging to such judgment debtor on the day when the said transcript was so filed and docketed in your county, or at any time thereafter; in whose hands soever the same may be," etc.

On the 14th of December, 1878, W. C. Williams made an

affidavit as in a proceeding in the circuit court for Milwaukee county, entitled "Andrew Kentzler, Plaintiff, vs. C. S. Hardy, Defendant, The Chicago, Milwaukee & St. Paul Railway Company, Garnishee." The affiant states that he represents the above named plaintiff, and makes the affidavit on his behalf; and that execution has been issued against the property of said defendant, and the time for its return has not expired. He then adds the statements required by sec. 2753, R. S., to show the liability of the garnishee. Subjoined to the affidavit was a garnishee summons in the form prescribed by sec. 2754, R. S. The summons and affidavit were served on the *Railway Company* December 14, 1878.

Afterwards, on hearing an order to show cause why the summons and affidavit should not be set aside, "for the reason that said affidavit does not state facts sufficient to give the court jurisdiction thereof, or to entitle the plaintiff to a disclosure from said garnishee," the circuit court made an order setting aside the affidavit and summons; and plaintiff appealed from the order.

For the appellant, there was a brief by *H. W. Chynoweth* and *W. C. Williams,* and oral argument by *Mr. Williams.*

*Melbert B. Cary,* for the respondent.

[The precise question upon which the cause went off here, is not discussed in the briefs.]

RYAN, C. J. The execution on which the proceeding of garnishment was taken, is returned amongst the motion papers, and must be held to have been before the court below on the motion.

It is the foundation of the proceeding. The jurisdiction, so to speak, of the proceeding of garnishment rests on the execution; and a defect in the execution fatal to its own validity, is equally so to the proceeding taken upon it. *Executio est finis et fructus legis.* And, by the law governing courts generally, every court has inherent power to issue writs of execution on

its own judgments, but not beyond its territorial jurisdiction. At the common law all process of all courts is limited to the territory over which their jurisdiction extends, and the power of any court to issue extra-territorial process is not inherent in it, but comes only by express statutory grant. *Sir Will. Harbert's Case*, 3 Reports, 11 *a;* Jacob's L. Dict., "Jurisdiction."

Section 8, art. VII of the constitution, declares that the jurisdiction of the circuit courts shall extend to all matters, civil and criminal, within the state, not excepted in that instrument and not prohibited by law. This is broad language, but should be construed in the light of other provisions of that instrument establishing the judicial system. Each circuit judge is to be elected by the people of his particular circuit, and shall reside within it. Section 7. The clerk of the circuit court of each county shall be elected by the people of the county. Section 12. Circuit courts shall be held in all counties organized for judicial purposes; and the judges of the circuit courts are permitted, and may be required by law, to hold courts for each other. So commissioners may be appointed for each county with judicial powers not exceeding those of a circuit judge at chambers. And elsewhere in the constitution is a provision limiting criminal prosecutions to the county or district of the offense charged. Section 7, art. I.

The constitution recognizes a manifest distinction between the civil jurisdiction which it vests, *ex proprio vigore*, in the circuit courts, and that which it does not specifically confer, but authorizes to be conferred by law on those courts. The terms used in the definition of jurisdiction, in section 8, sufficiently show the design of the constitution that the original civil jurisdiction of those courts should be largely subject to legislative control. So far as the constitution itself operates as a specific grant of territorial jurisdiction, it is manifest that it is the same in civil and criminal matters; for it is one equal grant, without discrimination between the two. And the lim-

itation of territorial jurisdiction in criminal matters operates as a limitation of territorial jurisdiction in civil matters, so far as the constitution itself confers the latter. But, while the limitation of criminal jurisdiction is absolute, controlling all legislation on the subject, it operates to restrain only the direct grant of civil jurisdiction in the constitution itself, and leaves untouched the general definition of territorial jurisdiction in civil matters, which the circuit courts may have, and does not import any restraint of legislative power to extend the latter to the full scope of the definition; for it applies to criminal jurisdiction positively and directly, to civil jurisdiction indirectly only. And all the clauses of the constitution, taken together, clearly limit the territorial jurisdiction of the circuit court, directly conferred by that instrument, to the county in which it is held; clearly design the circuit court in each county to be a county court, with jurisdiction, civil and criminal, limited to the county, subject to a general, perhaps unlimited, power of the legislature to extend its civil jurisdiction throughout the state.

The legislative and judicial history of the state shows that this has been, practically, from the beginning, the construction put upon the constitution by the profession and by the people. The statute of June 29, 1848, providing for the first election of judges, limits the civil jurisdiction of a circuit court to its own county, as the jurisdiction of the territorial courts had been limited; and limits its *mesne* process in civil actions to its proper county, permitting such process to go to other counties only after service of some of the defendants in its own county. Various provisions followed from time to time, enlarging the power in civil proceedings, until now *mesne* process in transitory actions may generally issue throughout the state. But the power is strictly statutory, and a circuit court can send its process out of its own county only under some positive provision of statute. See, generally, *Allen v. The State,* 5 Wis., 329; *State v. Pauley,* 12 Wis., 537; *Pereles*

*v. Albert,* id., 666; *State v. Messmore,* 14 Wis., 163; *Jarvis v. Barrett,* id., 591; *State v. Main,* 16 Wis., 398; *Lane v. Burdick,* 17 Wis., 92; *Beach v. Sumner,* 20 Wis., 274; *Arnet v. Ins. Co.,* 22 Wis., 516; *Brockway v. Carter,* 25 Wis., 510; *Re Eldred,* 46 Wis., 530.

So it is seen that the authority of the circuit court of Dane county to issue the execution in this case to Milwaukee county must come by statute. Without statutory authority, such an execution would be mere waste paper.

The only authority of law for issuing execution from a circuit court to another county is found in section 5, ch. 134, R. S. 1858, now section 2971, R. S. 1878. This provides that executions against property may be issued to the sheriff of any county where the judgment is docketed; and it cannot issue to another county where the judgment is not docketed. *Smith v. Buck,* 22 Wis., 577. It is true that the language of the opinion in this case is confined in terms to such executions as affecting realty, because the question there was the validity of a sale of realty. But the judgment of the court extends to all executions, because the statute makes no distinction between executions against realty and personalty, and gives one and the same authority to issue any execution, upon one and the same condition.

The docketing of a judgment in the county to which the execution may go is therefore a condition precedent of the authority to issue it; and it is hardly necessary to say that a statutory power upon condition precedent cannot be executed without compliance with the condition. The docketing of a judgment in another county is, so to say, jurisdictional to an execution upon it to that county; as much so as a judgment to an execution to any county. And an execution issued to one county upon a judgment docketed in another, but not in it, is very much like an execution issued without any judgment, anywhere, to support it.

An execution, to be valid, must disclose on its face the

authority to issue it. Herman's Exec., § 55. An execution not stating a judgment to support it is void. Equally so is an execution issued to another jurisdiction, not stating the condition on which it may so issue. On this point *Smith v. Buck*, *supra*, properly understood, is conclusive. The case is not very well reported, and the opinion, perhaps, not quite accurate in terms. It did not appear in that case, as might be inferred from the report, that a transcript of the judgment had not been docketed in the county to which the execution issued. It only appeared that the execution did not so state, and on that ground the execution was excluded by the court below; and the precise point of the judgment is that the execution was void for not reciting the docketing of the judgment in the county to which it was issued. The fact that it was not so docketed did not otherwise appear; but, because the fact was not recited in the execution, the negative was probably assumed, on the ground that *quod non apparet non est.*

The question in this case is clearly distinguishable, on substantial grounds, from *Sabin v. Austin*, 19 Wis., 421. There the execution was issued to the county in which the judgment was rendered. It recited the judgment, but not the time of docketing it, in compliance with section 8, ch. 134, R. S. 1858, now section 2969, R. S. 1878. This was held to be a defect only, amendable, and rendering the execution voidable, not void. A sale under the execution was therefore upheld. But the issuing of the execution within the territorial jurisdiction of the court was within the general power of all courts, independently of statutory authority; and section 8 went only to the form of the execution, not to the authority to issue it. Matter of form, in an act done under authority, is generally amendable; not matter on which the authority rests to confer jurisdiction of the act. And a circuit court issuing an execution defective in this particular to its own county, has before it the actual docket of the judgment by which to amend the

execution; but, issuing an execution to another county, has not the docket of the judgment in that county before it — has nothing before it by which to amend the execution.

Nothing held or said in *Jones v. Davis*, 22 Wis., 422; *Swift v. Agnes*, 33 Wis., 228, or *Allen v. Clark*, 36 Wis., 101, appears to be in conflict with the views taken in this case.

This is not the ground on which the summons to the garnishee was quashed in the court below, or on which the order was supported by counsel in this court. But, because it is a defect jurisdictional to the whole proceeding of garnishment, it has been thought most fitting to rest the judgment of this court upon it. The execution was void upon its face, would have been no protection to the sheriff, and could support no proceeding to collect it.

*By the Court.* — The order of the court below is affirmed.