SMALL & AL. *vs.* QUINCY & AL.

Where two citizens of this State agreed by a written memorandum, the one to deliver, and the other to receive, at *Philadelphia,* "from one to three thousand bushels of potatoes;" it was holden that the seller had the right to deliver any quantity he chose, within the range of the terms of the contract; and that he was not bound to make his election, till they arrived at the place of delivery, though requested by the other party after the shipment was made.

In such a case parol testimony is inadmissible to prove that it was also agreed, at the time of making the contract, that the quantity intended to be delivered should be designated and made known to the buyer, as soon as the cargo was shipped.

THIS was *assumpsit,* to recover the price of a quantity of pota toes, which the defendants refused to receive in *Philadelphia,* as the plaintiffs alleged they were bound to do.  The contract, as exhibited by the plaintiffs, was a written memorandum in these words ;—"We agree to receive of *John B. Osborn* and *Joseph Small* from one to three thousand bushels of potatoes, more or less, to be delivered in *Philadelphia* as soon as practicable, at fifty cents per bushel, to be delivered in good order.  *Portland,* *September* 14, 1825 ;"—which was signed by the defendants. The plaintiffs also proved that in *Philadelphia* they offered a cargo of potatoes, consisting of about three thousand bushels, to the agent of the defendants, who received only one thousand bushels, being instructed by the defendants to refuse the residue.

The defendants exhibited the counterpart of the agreement signed by the plaintiffs, which was of the same date, and of the following tenor ;—"We agree to sell and deliver to *William J. Quincy & Co.* or to their order, in *Philadelphia,* from one to three thousand bushels of potatoes, more or less, to be delivered in good order, at fifty cents per bushel."  The defendants then offered to prove, that at the time of making the contract, it was further agreed between the parties, that the precise quantity of potatoes which the plaintiffs would deliver, should be ascertained and made known to the defendants when the potatoes should be shipped at *Portland,* and ready for sea; all the parties residing and

trading in the latter place; and that the contract was so written because the quantity could not be ascertained, until they should be measured and shipped. This evidence the Chief Justice, before whom it was tried, refused to admit.

The defendants then proved, that when the vessel, which the plaintiffs had chartered for this purpose, was loaded and ready for sea, and after the manifest of her cargo was made out and in the hands of the plaintiff *Osborn*, they asked how many bushels of potatoes he had on board ; to which he at first answered, that he did not know; but afterwards he said he did know, but refused to tell. The defendants then offered to receive all he had on board, or any lesser quantity he might choose to deliver, and would then specify to them. But *Osborn* declined to name any particular quantity, only saying he should deliver from one to three thousand bushels. The defendants then informed him, that if he would not specify the quantity he intended to deliver, they would name the quantity they would receive ; viz. one thousand bushels and no more ; and that they should instruct their agent accordingly. They also proved, that *Osborn* said he had given orders to his captain, that if, on the arrival of the vessel at *Philadelphia*, the price of potatoes should be about fifty cents per bushel, he might deliver the whole cargo to the agent of the defendants in that city ; but if the price should be seventy-five cents or more, he was directed to deliver only a thousand bushels, and to dispose of the residue for the plaintiffs.

Upon this evidence the counsel for the defendants contended, —1st, that the right to elect the quantity to be delivered to the defendants was mutual, and to be exercised by either party upon reasonable notice to the other ;—2d, that if it belonged first to the plaintiffs, they were bound to give notice of the quantity when reasonably required, in order that the defendants might make preparation to receive and pay for it ; and that failing or declining to do this, the right of election vested in the defendants, and by this election the plaintiffs were bound. Both these points the Chief Justice overruled for the purpose of ascertaining the amount of damages, and directed the jury to find a verdict for the plaintiffs, which was taken subject to the opinion of the court upon the whole case as reported.

*Greenleaf*, for the defendants, maintained the points taken at the trial ; contending that upon the whole contract, the rights and obligations of the parties were strictly reciprocal ; and that the defendants had the same right to designate the quantity they would receive, as the plaintiffs had to specify the amount they would deliver. He insisted that it was due to mercantile honor and good faith, that upon reasonable request, either party, when it was in his power, should be holden to inform the other of the extent to which the contract was to be carried ; both that no unnecessary expense should be incurred on the one hand, and that, on the other, the requisite funds might be remitted to meet the demand.

As to the evidence rejected, he denied that it went to contradict the written contract. It was offered to supply a defect in the writing, by establishing a distinct and independent fact, and fixing the quantity, which the writing had left uncertain.

*Longfellow* and *Willis,* for the plaintiffs, proceeding to argue that the parol testimony was rightly rejected, as its effect was to set up a new and different contract, controlling that which was written, were stopped by the court, after having referred to these cases :—*Countess of Rutland's case* 5 *Co.* 26. *Haines v. Hare* 1 *H. Bl.* 629. *Clifton v. Walmsley* 5. *D. & E.* 564. *Roulstone v. Fibbert* 3 *D. & E.* 406. *Hunt v. Adams* 7 *Mass.* 518. *Richards v. Killham* 10 *Mass.* 244. 14 *Mass* 155. *Powel v. Edwards* 12 *East.* 6. *Stackpole v. Arnold* 11 *Mass.* 27.

MELLEN C. J. delivered the opinion of the court.

This case presents two questions. 1. Was the parol evidence which was offered properly rejected ? 2. Were the judge's construction of the contract and instructions to the jury correct and proper ? In considering these questions we shall reverse the order in which they were presented at the trial; that course appearing to be the most direct and plain. The first inquiry then is, as to the nature and true construction of the written contract. The case presents us the evidence of the written promise of each party to the other ; both promises having been made at

the same time, and together constituting one contract ; and it seems to be an intelligible one, and easily understood.   By its terms the plaintiffs were bound to sell and deliver to the defendants at *Philadelphia*, at least one thousand bushels of potatoes, at the agreed price ; but they were not bound to deliver more than three thousand bushels ; and the defendants on their part, were not bound to accept and receive less than one thousand bushels ; nor more than three thousand.   These were the respective rights of the parties according to the written contract. The plaintiffs were to do the first act by delivering or tendering the potatoes at the place appointed; and our opinion is, that they were not obliged to determine as to the quantity they intended to deliver, until the arrival of the vessel at *Philadelphia*.   They reserved to themselves an option as to the quantity, within the stipulated limits ; and surely they are not accountable for anything more than a performance of their contract with the defendants ; or chargeable with any wrong for declining to name the quantity they intended to ship and deliver.   *Osborn's* answer was, in the words of the contract, " from one to three thousand bushels."   As by the terms of the contract tho option or election was given to the plaintiffs with respect to quantity, we do not perceive why they might not lawfully make use of it.   We are therefore of opinion, thai the construction which was given by the judge to the contract, was the true one; and that his instructions to the jury were correct, inasmuch as the plaintiffs had fairly performed their part of the contract by seasonably shipping the potatoes to *Philadelphia*, and there offering to deliver to the agent of the defendants a quantity, a little short of three thousand bushels.   The defendants were bound to receive them, though the price had recently fallen.   In this view of the cause the verdict is right.

Our next inquiry is, whether the parol evidence offered by tho defendants ought to have been admitted.   The evidence offered was to prove, that at the time of making the contract, there was a further agreement (not reduced to writing) that the plaintiffs should inform the defendants at the time of shipping the potatoes, the precise quantity they intended to deliver; and that the written

contract was drawn in the manner it was executed, because the quantity could not then be ascertained. This is not a case of an additional parol agreement, made subsequently to the written contract ; and so we need not examine it in that point of view. In the case before us the parol agreement, offered to be proved, was prior to the signature and completion of the written agreement. The defendants' motion to introduce this evidence expressly discloses this fact. We apprehend, that parol proof is not admissible to contradict or vary a contract made by deed or other writing. The authorities to this point are numerous and decisive. The principle is so well settled, that it must not be disturbed. We refer generally only to the cases which have been cited by the plaintiffs' counsel—though we may notice some others particularly in the course of this opinion.

It is clear, that the proposed proof goes directly to vary and contradict the defendants' agreement ; because it is to shew that the plaintiffs had not a right to deliver to the defendants at *Philadelphia* any quantity of potatoes between one and three thousand bushels, and receive the stipulated price for them; and that they were not bound there to receive any greater quantity than should be named to them by the plaintiffs at *Portland.* The offered proof goes essentially to vary the written agreement, by taking from the plaintiffs the right of election, which they reserved to themselves, of judging of the market on their arrival at the place of delivery. Besides, if the evidence is not intended to contradict or vary the written agreement, why is it offered ? It is said it is only to explain it ;—but does it need any explanation? Is there any latent ambiguity? The motion to introduce this proof is not predicated on any such idea; no such idea exists. The agreement, which was carefully drawn up by one of the defendants, is perfectly plain, intelligible, and free from all pretence of ambiguity; not even a mistake is suggested ; but according to the report, the fact which the defendants wished to prove by parol was intentionally omitted in the written contract. The most important case, as to the question we are now considering is, that of *Stackpole v. Arnold,* before mentioned; as it contains a review of some preceding cases, and professes to settle

the law on the subject, and has been since so recognized. It was decided in the year 1814, and has ever since that time been considered as a decisive authority in Massachusetts and this State. It has narrowed the generality of the language of the court in the case of *Hunt v. Adams* 6 *Mass.* 519, and also in the case of *Barker v. Prentiss* 6 *Mass.* 439. In the former of those cases, *Parsons C. J.* intimates, that where the whole contract is not reduced to writing, parol evidence may be admitted to prove the part omitted ; but when the same cause came before the court again, as reported in 7 *Mass.* 518, the court distinctly decided, that parol evidence was inadmissible and incompetent to control the effect of a written contract ; and the only exceptions to the rule, are cases of latent ambiguity and of peculiar usages,which are by law considered as always referred to. *Sewall J.* in delivering the opinion of the court uses this strong and clear language. " When a contract has been stated in a writing assented to and signed by the parties concerned, and that continues in being and under the control of the party relying on it, evidence of other parol agreements, would be a rejection of that evidence which is necessarily the best." The court in giving their opinion in *Stackpole v. Arnold*, allude to and confirm this decision in the case of *Hunt v. Adams*, and state that *Parsons C. J.* participated in it, and they also restrict the decision in *Barker v. Prentiss* ; and evidently seem disposed to confine it to cases exactly similar to that. The decision in *Stackpole v. Arnold* is full and direct, that generally parol testimony is not to be received to contradict, vary or materially affect by way of explanation, any written contract, provided the same is perfect in itself, and is capable of a clear and intelligible exposition from the terms of which it is composed. See also *Preston v. Merceau* 2 *Wm. Bl.* 1249, and *Coker v. Guy* 2 *Bos. & Pul.* 565. Independently of the cases above cited and commented upon, it would seem to be a complete abolition of the rule of law, which excludes parol proof where a contract is reduced to writing, to allow the introduction of such proof on the principle that the whole contract was embraced in the writing ; it would open a door, through which evidence might enter, that would do away

the whole effect of the written contract, which contract the law presumes was all reduced to writing.—So say the court in *Stackpole v. Arnold.* We are, for the reasons above assigned, of opinion, that the evidence which was offered and rejected, was not by law admissible, and we are therefore all agreed that there must be

*Judgment on the verdict.*