## DESSERT vs. SCOTT and another.

*October 3 — October 23, 1883.*

CONTRACTS.    *(1) Promisor's right of election on alternative promise. (2) Rule applied and contract construed.*

1. When an obligation is in the alternative, as to do a thing upon one day or another, or in one way or another, the right of election is with the promisor if there is nothing in the contract to control that presumption.

2. A contract for the sale of lands, made September 25, 1878, provided

that the amount due to the state on the land should be deducted from the purchase money, and "if any interest due the state for the year 1878, or anything later, parties of the first part to pay the same to January 1, 1879, or up to the time of closing this sale." Both parties expected the sale would be closed prior to January 1, 1879, but, through no fault of the vendors, it was not so closed until April 7, 1879. *Held*, that the vendors were not bound to pay the interest due to the state for the year 1879, which was by law "payable in advance on the 1st day of January, or on or before the 31st day of May thereafter."

APPEAL from the Circuit Court for *Wood* County.

On September 25, 1878, the defendant *Neeves* sold some pine logs and lands to the plaintiff by a written contract. This controversy does not involve the logs. The lands were held by him under certificates issued by the commissioners of public lands in 1869, calling for the payment of $37 on each forty acres, besides annual interest, and maturing on January 1, 1879. These certificates were then in pledge by *Neeves* for the performance of another contract on which the defendant *Scott* was also a surety. *Scott* had no further interest in the certificates, but the contract was in form by both defendants as owners of the lands with the plaintiff. It provides in substance for the sale, at certain rates per thousand feet, of the logs and of the uncut timber, the quantities of which were to be ascertained by scaling; for the payment of the price by the plaintiff's assumption of the $37 due on each forty-acre tract to the state and by his notes for the balance; and for the payment by the defendants of taxes then due, and also that "if any interest due the state for the year 1878 or anything later, parties of the first part [defendants] to pay the same to January 1, 1879, or up to the time of closing this sale." The vendors also covenanted against mortgages and judgments.

No time of performance was named, but the estimates were ready in December, 1878, and in that month, also, *Scott*, apparently to cut off some supposed judgment liens,

and by mutual arrangement, bid in the lands at a sale by the public land commissioners for the interest on the certificates for 1878, then overdue, with penalty and costs, paid all interest up to January 1, 1879, and took out in his own name new certificates on each of which the same amount of principal remained due. He then notified the plaintiff of the vendors' readiness to complete the sale, but from unexplained causes it was not consummated until April 7, 1879. The new certificates were then assigned, the price, less the amount of the certificates, paid by the plaintiff's negotiable instalment notes, and the taxes for 1878 were paid.

The certificates stated that they drew interest from January 1, 1879. No representations as to the time up to which interest had been paid were asked for or made.

The plaintiff paid no interest for 1879 on his certificates, and hence the lands were forfeited and sold in December, 1879, without the plaintiff's knowledge. He afterwards brought this action for the resultant damages, consisting of the amount of his notes paid and necessarily to be paid to *bona fide* holders, the taxes and other outlays by him on the lands, and the difference between the contract price and the value of the lands. The trial was without a jury. The foregoing statement and the opinion contain the substance of the findings. Judgment was given for the plaintiff for the amount of his notes and outlays on the lands, but was refused as to the excess of value over price.

The defendants appealed.

For the appellants there was a brief by *Gardner & Gaynor*, attorneys, and *Wm. F. Vilas*, counsel, for *Scott*, and *L. P. Powers*, attorney for *Neeves;* and there was oral argument by *Mr. Gardner* and *Mr. Vilas*.

*G. W. Cate*, for the respondent.

COLE, C. J. It is evident that the written contract fixes or determines the rights and liabilities of the parties to it.

The only clause as to which there is any serious difference of opinion, and which the court is called upon to interpret, is the following: " This sale subject to an amount due the state of $37 for each forty-acre tract; that amount due on the lands to the state to be deducted from the purchase money; and *if any interest due the state for the year 1878, or anything later, parties of the first part to pay the same to January 1, 1879, or up to the time of closing this sale.*"

It appears that the subject matter of this contract of sale was some saw-logs in Marathon county and a quantity of agricultural college lands. The title to these lands was in the state, but the usual certificates of sale had been given by the school-land commissioners to purchasers in 1869. On the 25th of September, 1878, the defendants agreed to sell these logs and lands to the plaintiff. There is no controversy about the logs. The plaintiff agreed to pay for the lands at the rate or price of one dollar per thousand feet for all the merchantable pine standing or uncut upon them. The contract declares the meaning of the word " merchantable " as used therein. Manifestly, the parties intended that the logs should be scaled, and the timber standing on the lands should be estimated when the contract of sale was to be consummated according to its terms. No time, however, was specified within which these things were to be done. But the court found that the timber on the lands was estimated some time in December, 1878, and all the parties notified thereof.

For a reason which is fully explained in the testimony, and which seems to have been perfectly understood and agreed upon by the parties, the lands were suffered to be sold by the state on the 12th day of December, 1878, for unpaid interest and charges. They were bid in by *Mr. Scott,* who subsequently obtained the usual certificates of sale, he having paid all charges and the interest up to January 1, 1879, but leaving unpaid $37 purchase money due the state on each

forty-acre tract. By the law, as it then and now stands, interest on the unpaid purchase money was payable in advance on the 1st day of January of each year, or on or before the 31st of May thereafter. Sec. 209, R. S. The parties met on the 7th of April, 1879, and completed the sale. The plaintiff gave his notes as agreed upon in the contract, and the new school-land certificates were assigned to him. But it appears the lands were forfeited and sold by the state in December, 1879, for the failure to pay the interest for that year. This statement is sufficient to enable us to understand the contention of the respective parties.

Now the plaintiff claims that the clause of the contract above quoted imposed upon the defendants the obligation to pay the interest on the certificates assigned for the year 1879, and as the lands were forfeited in consequence of the failure to pay such interest the loss falls upon them. On the other hand, it is insisted that the engagement was in the alternative either to pay the interest up to January 1, 1879, at most, or only to an earlier date, in the event the sale should be perfected and " closed " before that time. It is said the words " to January 1, 1879," are words of limitation, to fix a time beyond which the defendants were not bound to pay any interest, and were inserted for their protection, so as to secure the completion of the sale before that date.

It is a well-settled principle of law, when the obligation is in the alternative, as to do a thing on one day or another, or in one way or another, that the right of election is with the promisor, if there is nothing in the contract to control that presumption. 2 Parsons on Con., 656; Addison on Con., § 309; *Smith v. Sanborn*, 11 Johns., 59. It is apparent from the face of the contract that the parties expected when it was entered into that the sale would be " closed " or perfected some time prior to January, 1879. This is evident from the last clause. The principal on the old certificates became due at that time. And this clause provides

that if the amount due the state upon the lands has to be paid at that time, the parties should pay the amount equally, and the one-half which should be thus paid by the defendants was to be repaid to them by the plaintiff on the same terms as were stipulated in the contract for the payment of the residue of the purchase price coming to them. This plainly shows that the parties expected the sale would be completed before January, 1879, and hence the force of the limitation. It was certainly no fault of the defendants that the completion of the sale was delayed beyond that time. As soon as *Mr. Scott* bid off the lands and obtained the new certificates, he notified the plaintiff of the fact and was in a position to perform on his part. The timber had been estimated and the parties notified of the fact. It is perfectly apparent that the defendants might then, on a tender of the certificates duly assigned, have maintained an action against the plaintiff for a specific performance of the contract. Had such an action been brought in December it would have been no defense that the interest on the certificates for the year 1879 had not been paid.

In the view we have taken of the contract it is unnecessary to notice the other points which were so ably discussed by counsel.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.