Drake vs. Harrison and another, Garnishees, etc.

---

DRAKE, Respondent, vs. HARRISON and another, Garnishee, etc., Appellants.

*April 14 — June 1, 1887.*

*Contract: Evidence: Execution: Garnishment: Docketing judgment.*

1. A party who has reserved to himself by contract the right to discharge his obligation under such contract in two or more different ways, may, at any time before the day of payment has passed, elect in which way he will discharge it; but if he has an interest in making the payment in one of those ways, he cannot, without his own consent, be deprived of his right to pay it in that particular way, either by the act of his creditor, or by garnishment in a suit against the latter.

2. Railroad contractors who, by their contract with their subcontractors, have the right to pay the money to become due the latter under such contract directly to the laborers employed by the subcontractors, and are bound by their own contract with the railroad

| | |
|---|---|
| 69 | 99 |
| 72 | 40 |
| 72 | 657 |
| 69 | 99 |
| 74 | 575 |
| 69 | 99 |
| 75 | 61 |
| 75 | 62 |
| 69 | 99 |
| 86 | 308 |
| 69 | 99 |
| 112 | [1]655 |
| 69 | 99 |
| 59 LRA 365n | |
| 59 LRA 377n | |

company to discharge all the claims of men who perform labor in the construction of the road, have an interest in the payment of such laborers, and cannot be held liable as garnishees of their sub-contractors in respect of moneys due from them to their laborers, though such contractors may not have bound themselves by agreement with the laborers to pay the same to them.

3. In a garnishee proceeding to reach the amount due from contractors to their subcontractors, evidence is admissible on the part of the garnishees to show that they both have the right to pay, and have an interest in paying the money due to the laborers under such subcontractors, instead of paying it to the latter.

4. Although a judgment against two persons has been docketed so as to make it a lien upon real estate only as against one of them, yet an execution issued thereon to the sheriff of the county where the judgment was rendered is not void, but is a sufficient basis for garnishee proceedings. If necessary, in order to render such an execution valid, the court would have power to order the judgment to be docketed *nunc pro tunc* against the other judgment debtor.

5. Whether a garnishee action is purely legal or purely equitable, and whether, if the latter, it was error to direct all the issues to be tried by a jury, is not decided.

APPEAL from the Circuit Court for *Jefferson* County. The defendants, sought to be charged as garnishees on execution, appeal from a judgment against them. The case is fully stated in the opinion.

*F. B. Van Valkenburgh,* for the appellants, argued that the garnishee proceeding was equitable, and should have been tried by the court without a jury. Sec. 2766, R. S.; *Fraedrich v. Flieth,* 64 Wis. 184; *Steen v. Norton,* 45 id. 412; *Wells v. Am. Exp. Co.* 55 id. 33; *Bates v. C., M. & St. P. R. Co.* 60 id. 301. The original judgment was against two persons, McD. and L., but was never docketed against McD. so as to be a lien upon his real estate in Jefferson county, and never at all in the county where the defendants, sought to be charged as garnishees of McD., resided, and consequently the execution was improperly issued, and the court acquired no jurisdiction of them. R. S. sec. 2899, subd. 7; *Smith v. Brick,* 22 Wis. 577;

*Hesse v. Mann,* 40 id. 560; *Kentzler v. C., M. & St. P. R. Co.* 47 id. 641. The indebtedness of defendants sought to be recovered was not due to McD. alone, and they could not be liable as his garnishees. *Singer v. Townsend,* 53 Wis. 126, 226; *Brande v. Bond,* 63 id. 140. The garnishees had the right, under their contract with McD. & Co., to pay the money earned under it directly to the laborers; and they were bound by their contract with the railroad company to discharge the claims of such laborers; consequently the money was not subject to garnishment. Subd. 4, sec. 2769, R. S.; *Bishop v. Young,* 17 Wis. 47; *Redmond v. Galena & S. W. R. Co.* 39 id. 426; *Gage v. Chesebro,* 49 id. 486; *Putney v. Farnham,* 27 id. 187; *Balliet v. Scott,* 32 id. 174; *Weisel v. Spence,* 59 id. 301; Drake on Attachment, secs. 458, 462. It makes no difference whether the garnishees had specially agreed with the laborers to pay them; the railroad company was bound by statute to do so, and they as contractors were subject to the same liability. *Streubel v. M. & M. R. Co.* 12 Wis. 74; *Keyes v. C., M. & St. P. R. Co.* 25 id. 691; *St. Louis v. Regenfuss,* 28 id. 144.

For the respondent there was a brief by *Gregory, Bird & Gregory,* and oral argument by *G. W. Bird.* To the point that, to justify the garnishees in paying the laborers after the service of the garnishee process, they must have bound themselves to do so by a contract to which the laborers assented, they cited *Putney v. Farnham,* 27 Wis. 187; *Balliet v. Scott,* 32 id. 174; *Felch v. Eau Pleine L. Co.* 58 id. 431; *Huntley v. Stone,* 4 id. 91; *Goode v. Barr,* 64 id. 659; *Kelly v. Babcock,* 49 N. Y. 318; *Seaman v. Whitney,* 24 Wend. 260; *Winninghoff v. Wittig,* 64 Wis. 180.

TAYLOR, J. The material facts in this case are the following: On the 27th day of September, 1881, the respondent recovered a judgment against the above-named defendants, J. M. Leighton and A. D. McDonald, in the circuit court of

Jefferson county, for the sum of $2,105.50 damages and costs. This judgment was docketed on the same day by the clerk of said court under the letter " L " against "Leighton, J. M., and A. D. McDonald," and the judgment was never docketed against the said McDonald under the letter " M." An execution was issued out of said court, in due form of law, upon said judgment, on the 28th of November, 1885, directed to the sheriff of said county of Jefferson. After issuing said execution, and before the return thereof, an affidavit was made on behalf of the plaintiff in said judgment, in the form prescribed in sec. 2735, R. S. A garnishee summons was issued upon such affidavit against the appellants as garnishees, which was served on said appellants on the same day. Afterwards, and within twenty days, the garnishee defendants made and served the answer required by sec. 2759, R. S., denying all indebtedness or liability to the defendants, Leighton and McDonald, or to either of them, and denying that they had in their possession, or under their control, any property, real or personal, effects or credits of any description, belonging to the said defendants, or either of them; and thereupon the plaintiff served notice that he chose to take issue on the answer of the garnishees, and that he would maintain them to be liable as garnishees.

This case was afterwards brought to trial upon the issue so made; and, against the objection of the garnishees, the issues in the case were tried by a jury.

Upon the trial the following facts appeared: (1) A written contract made between the garnishees and the defendant A. D. McDonald was offered in evidence. This contract was dated on the 24th day of August, 1885. The contract was for doing all the work on the line of the Chicago, Wisconsin & Minnesota Railroad, from station zero, at the outskirts of Chicago, for the distance of twenty-eight miles west. The only matters in such contract which have any material bearing upon the questions involved in this case

Drake vs. Harrison and another, Garnishees, etc.

are the following: There are the following stipulations in said contract in regard to the manner in which the garnishees should pay the money which should become due said McDonald for his work under the same:

" It is further agreed by the party of the first part that, during the progress of the work, an estimate shall be made on or about the first of each month of the materials furnished and the labor performed under this contract, and that payments shall be made by said first parties upon the estimate, and certificate of the engineer on the work, on or about the 15th day of each month, for the amount and value of the work done and materials furnished in structures during the previous month; but fifteen per cent. of the amount of each estimate shall be deducted and retained by the said first parties until the completion of the work embraced in and covered by this contract: provided, that within thirty days after the engineer shall certify that the said work is fully performed, and after the final estimate and certificate of completion by the engineer shall have been determined and delivered to the first parties, all sums due the parties of the second part shall be fully paid, and this contract shall thereafter be, and be considered to be, determined. It is mutually agreed and understood by the parties hereto that said parties of the first part [meaning the garnishees] shall have the right to pay the money, or any portion thereof, due under this contract, for labor performed or materials furnished, to the persons actually performing the labor or furnishing the materials, respectively, whenever after the same are payable; and said payments are hereby expressly authorized by the second parties to be made, and shall be considered as payments hereunder, as fully as though made to said second parties directly; and said parties of the second part also agree, whenever so required, to furnish to the parties of the first part a full and complete statement of all liabilities incurred on account of

work herein contracted for, which are outstanding and unpaid."

The words "second parties" used in said contract must be taken to mean A. D. McDonald alone, as he was the only person who signed the contract as second party. There is also a provision in the contract that, if the second party fails to perform the contract according to its terms, he shall forfeit all right to the fifteen per cent. reserved as provided above.

The evidence in the case shows that the work was commenced under the contract immediately after its date, and was not completed until about the 1st of January, 1886. It also shows that the garnishee summons was served on the appellants on the 28th day of November. It further shows that all the work done and materials furnished under the contract, previous to the 1st day of November, had been paid for by the garnishees previous to the said 28th day of November; that when the summons was served no estimate of the work done and materials furnished by McDonald during November had been made, but it was admitted on the trial that the value of the work done and materials furnished by McDonald under the contract, previous to the 28th of November, and which had not been paid for, exceeded the sum of $4,000.

Before the trial the plaintiff took the depositions of *Green*, one of the garnishee defendants, and to the 116th interrogatory, which reads as follows: "Now, it appears by this account, *Mr. Green*, that you have paid nearly $11,000 on the contract since the garnishee process was served. *Answer*. We had paid nothing to A. D. McDonald & Co. [Our contract with the railroad company compels us to pay the laborers for all the work done on the road which we have done.]" The part inclosed in the brackets was stricken out on motion of the plaintiff, and the defendants duly excepted. Answers of a similar character to the 132d and

135th interrogatories were also stricken out on motion of the plaintiff and exceptions taken. The defendants offered in evidence a contract they had made with Colby and Pinney for the building of the road, which McDonald had contracted with them to construct under his contract given in evidence. This was objected to by the plaintiff and ruled out by the court. The defendants, at the time of offering the contract, stated the object was to show what contract *Harrison* and *Green* were working under at the time they employed McDonald; and they proposed to show, in connection with that, the fact that McDonald was familiar with that contract, and understood the conditions of it, and his was made similar to it, with the understanding that he was responsible as they were. Exception was taken to this ruling by the defendants.

The garnishee *Green* testified on the trial as follows: " After the garnishee notice was served on us, we paid the money directly to the laborers, who did the work, in currency, by our pay-master. We paid the workmen as their work became due. *Question.* But the amount which appears to have been earned and unpaid on the 28th of November,— when was that paid? *Answer.* In December. It was paid out on the pay-rolls made out by McDonald or his book-keeper; I don't know which it was. They were furnished us by McDonald. These payments were made on the line, mostly to the men who were then working there. The payments were made with the assent or request of McDonald." Considerable evidence was given upon the subject of paying the men who did the work, after the garnishee notice was served; but, under the instructions given by the court to the jury, these payments were held to be no defense to the claim of the plaintiff against the garnishees, unless it was further shown that the garnishees had personally employed the men who did the work for McDon-

Drake vs. Harrison and another, Garnishees, etc.

ald under his contract, and became personally bound to each laborer to pay the amount of his wages.

The learned judge instructed the jury as follows: " If you find that there was no agreement made by *Harrison* and *Green* with the workmen, or any of them, on and prior to November 28, 1885, and prior to the time of the service of the garnishee summons upon them, to pay them their wages, then you must answer the second and third questions, ' No.' If *Harrison* and *Green* paid the $4,000 to workmen with whom they had not, on or before November 28, 1885, made an agreement to pay them, or some of them, their wages, then you must answer the second and third questions negatively. You must answer the second and third questions negatively, unless you find that *Harrison* and *Green* not only made an agreement with the workmen before November 28, 1885, to pay them their wages, but that they also paid the $4,000 to the men with whom they had made that agreement. If they paid it to other men, with whom they had no such arrangement, then you must answer the second and third questions negatively. The burden of proof is upon the garnishee defendants to establish, by a preponderance of the evidence, that they did make such agreement with the workmen on or before November 28, 1885, when the garnishee summons was served on them; and if the garnishee defendants have failed to establish the making of such an agreement by the preponderance of the evidence, then you must answer the second and third questions negatively."

It is very clear, from the whole charge of the learned judge that he was of the opinion, and so repeatedly instructed the jury, that the garnishees had no authority under their contract with McDonald to pay any of the laborers under the agreement in the contract after the garnishee process was served on them; that, in fact, the option

which the garnishees reserved to themselves to pay the laborers who did the work under the contract, instead of paying McDonald for such work, was taken away by the service of the garnishee process. The learned judge, after quoting the provisions from the contract, says: "That was a right that *Harrison* and *Green* had under this contract, as between them and McDonald and the men, to pay the men who were actually doing the work; but, when the garnishee summons is served upon *Harrison* and *Green*, then their right to pay under this contract would be interfered with somewhat. The men who did the work under this contract could not sue *Harrison* and *Green*, if that was all there was existing between them and *Harrison* and *Green*. They could not sue *Harrison* and *Green* until the knowledge of this provision was brought to them, and they assented to it, and *Harrison* and *Green* agreed to pay it to them. So that, if this was all there was in the case, it would have been my duty to have directed a verdict for the plaintiff against the garnishees in this case."

To the instructions above given by the learned circuit judge exceptions were duly taken by the garnishees.

It will be seen by the offers of evidence made by the garnishees, and which were excluded by the court, the garnishees endeavored to show that they were interested in having the laborers, who performed the work for McDonald under his contract with them, paid in full. Their offer was, in substance, to show that they were bound by the railroad company, who were constructing the road, and which they had agreed with the company to construct, to discharge the claims of all laborers and material-men who performed labor or furnished materials in the construction of such road. This evidence, if admitted, would have very clearly established the fact that the right reserved in the contract with McDonald to the garnishees to pay the laborers, instead of paying McDonald, the amount due for their

wages, was a matter in which they had an interest, and that the option to pay could not be arbitrarily withdrawn by McDonald; and, if it could not be withdrawn by McDonald, then it could not be withdrawn by a creditor of McDonald garnishing them before the time had passed within which the garnishees were, under the contract, authorized to exercise the option reserved to them in their contract. The interest of the garnishees, as contractors with the railroad company for the construction of the road, in the payment of the wages of the laborers, would more clearly appear had the learned counsel for the garnishees introduced in evidence the statutes of Illinois upon the subject of the lien of laborers upon railroads for their unpaid wages, showing the right of such laborers to compel the payment of their wages by the company notwithstanding the fact that they were working for the contractors with the company, and not for the company. See Hurd, Rev. St. Ill. 1883, p. 723.

The rule of law is very clear that, when a party has reserved to himself by contract the right to discharge his obligation under such contract in two or more different ways, he may elect at any time before the day of payment has passed in which way he will discharge the same. 2 Pars. Cont. 657, 658; Story, Cont. § 1323; *Smith v. Sanborn,* 11 Johns. 59; *M'Nitt v. Clark,* 7 Johns. 465; *Choice v. Moseley,* 1 Bailey, 136; *Small v. Quincy,* 4 Me. 497; *Appleton v. Chase,* 19 Me. 79; *Layton v. Pearce,* 1 Doug. 15, 16; *Chippendale v. Thurston,* 4 C. & P. 98.

It is urged that it does not appear upon the face of the contract that the garnishees had any interest in the payment of the laborers, and so the reservation in the contract is a mere option in which they have no interest, and the right to exercise such option may be withdrawn by the other party at any time, either before or after the money is payable on the contract. If such were the case, and the

evidence in the case failed to show that the garnishees had any interest in making such payments, there are authorities which hold that the option cannot be insisted upon by the party to whom it is reserved. See *Shannon v. Hoboken*, 37 N. J. Eq. 123, and other cases referred to in the brief of the learned counsel for the respondent in this case. My view of this contract is that it must be presumed, in absence of any proofs showing the contrary, that the garnishees had an interest in having the laborers of McDonald paid, and, in the absence of such proofs, the provision must be held to bind all the parties to the contract. But we do not place our decision in this case upon that construction of the contract. The record discloses the fact that the garnishees offered affirmative evidence on their part tending to show that they had an interest in the payment of the wages due the laborers, which evidence was rejected by the court, and exceptions duly taken by the garnishees. And the court held, substantially, that, as a question of law, the garnishees had no interest of any kind in making payments to the laborers instead of to McDonald, and so rejected the evidence offered to show such interest.

It seems to us that there can be no ground for holding that the garnishees could not, if they had any interest in doing so, have discharged their debt for the amount which would have been due to McDonald for the work done by him under his contract in the month of November, at any time before the 15th of December, by paying the amount then due in discharge of the wages of the laborers then also due and unpaid by McDonald; and, if they had the right under their contract to discharge the debt so to become due for the work done in November, it is evident that McDonald could not defeat such right by an assignment of the amount so to become due to him, before or after the estimate had been made by the engineer as provided by the contract, and before the 15th day of December, when the same was pay-

able; and, if he could not defeat the right by an assignment of his claim, then the plaintiff cannot hold it under his garnishee process. *Murphy v. Bowery Nat. Bank*, 30 Hun, 40, 45; *Greene v. Warnick*, 64 N. Y. 226; *Mechanics' & T. Nat. Bank v. New York*, 58 How. Pr. 207.

It seems very evident that the learned circuit judge was of the opinion that such right of the garnishees under their contract could be defeated at the will of McDonald. Under any other view of the case, it is impossible to uphold his instructions to the jury and his rulings on the trial. Upon the undisputed evidence in the case, and offered on the trial, and upon the findings of fact by the jury, it seems to us a verdict in favor of the respondent cannot be sustained.

The only facts found or questions answered by the jury were the following: "(1) What was earned and unpaid on the contract between *Harrison* and *Green* of the first part, and A. D. McDonald of the second part, bearing date August 24, 1885, being the contract introduced in evidence on the trial, on the 28th of November, 1885, at the time of the service of the garnishee summons in this action? "It was admitted, and the jury so found, $4,000." (2) Had *Harrison* and *Green*, at the time when said garnishee summons was served, or prior thereto, entered into an agreement with the men actually performing the labor under said contract, with knowledge and consent of A. D. McDonald, by which agreement with said laborers they bound themselves to pay said laborers the money earned by them under said contract, instead of paying the same to McDonald?" This question was answered in the negative by the jury. "(3) What sum of money, if any, did *Harrison* and *Green* pay to the men actually working on the road, to whom they had agreed to pay it, with the knowledge and consent of McDonald, prior to the time of being served with the garnishee summons?" To this question the jury answered, "Not any."

These findings of fact do not, under the contract in evi-

dence, make out a case in favor of the respondent, if it was made to appear that the garnishees had any interest in making payment to the laborers.

This is not at all like the cases in this court where it has been held that a servant or bailee, who receives money from A., with directions to pay it to B., or when A.'s debtor, without any further consideration for his promise, agrees to pay the amount of the debt due to A. to one of his creditors, in which the rule laid down by the learned circuit judge might apply. In these cases it is held that, until the money is actually paid over as directed, the party placing the money in the hands of his servant or bailee may revoke the authority, and, in the case of the debtor, he may revoke the direction to pay the debt to his creditor, at any time before such creditor has knowledge of the agreement, and has accepted the debtor's promise to pay his debt for the amount of his claim against A. Under the offer of evidence made by the garnishees, the case is like the case of A. selling his farm to B. by warranty deed, there being an outstanding mortgage upon the farm, which by his covenants he is bound to pay. B. pays the whole purchase price, except the amount to become due upon the mortgage, and agrees to pay that amount to A. when the mortgage becomes due, but reserves the right to pay the amount to become due to the mortgagee instead of to A., if A. fails to pay the mortgage when due. In such case it is too clear for discussion that B. has an interest in the payment of the mortgage which A. cannot take away without his consent. *Kelly v. Roberts*, 40 N. Y. 432. The right reserved in the contract between the parties giving the garnishees the option to discharge any debts which might become due to McDonald under the contract by a performance on his part, by paying the amounts due to the laborers instead of to McDonald personally, is a substantial part of such contract, and, if the garnishees have an interest in

making such payment, its effect cannot be avoided by any act of McDonald's without their assent.

The evidence shows conclusively that there was nothing due and payable under the contract when the garnishee summons was served, and that nothing became due until the 15th of December thereafter. It is also clear that if on the 15th of December there was enough money due to the laborers at that date unpaid by McDonald, the garnishees, if they had any interest in making such payment, would have a right under their contract to pay the money due to such laborers in discharge of their liability to McDonald, and no objection made by him to such payment could prevent such payment, and discharge of their liability under the contract. If McDonald could not prevent the discharge of their debt in that way, it is certain the creditor of McDonald cannot by virtue of his garnishee process. If the garnishees were interested in making payments to the laborers, and they can be held at all for the money which had been earned when the garnishee summons was served, the amount of which had not then been ascertained as provided in the contract, and the payment of which was not due until the 15th of December then next, they can only be held if, on or before the 15th of December, they had not paid the amount so earned in discharge of the claims of laborers then due to such laborers who had performed the work for McDonald under their contract with him. If they had paid said sum to said laborers on or before said 15th of December, then the plaintiff was not entitled to a judgment against the garnishees; and it was wholly immaterial whether such sum was paid with the knowledge or consent of McDonald, or whether the garnishees had before that time employed the laborers personally, or whether the laborers had notice that they would make such payment. If they were paid, and the money was then due them, the

garnishees had discharged their promise to pay for the work so done in the manner provided by the contract, and their right to so discharge it cannot be taken away without their consent. Had the money been due and payable at the time the garnishee process was served, and the garnishees had not at that time paid either the laborers or McDonald, then the rule laid down by the learned judge in his charge to the jury, and in the questions submitted to them, would have been applicable, and the same question would have been presented as in *Balliet v. Scott*, 32 Wis. 174.

The case was tried upon an erroneous view of the rights of the garnishees under their contract with McDonald. The court erred in excluding the evidence offered by the garnishees, and in the instructions to the jury; and the findings of fact by the jury are not sufficient to authorize a judgment for the plaintiff.

There were several other objections made by the learned counsel for the appellants against the right of the respondent to maintain this proceeding, and as there will probably be a new trial of the case, it may not be improper to consider the objection " that the respondent could not maintain his action of garnishment, for the reason that the court had no right to issue an execution on the judgment, because the judgment had never been docketed as a judgment against McDonald." Admitting that the judgment had never been properly docketed against McDonald, so as to make it a lien upon real estate, we are of the opinion that an execution issued upon such judgment to the sheriff of the county in which the judgment was rendered is not void. Whether it be voidable or not need not be determined. If it was not absolutely void, then, so long as it was outstanding, it was a sufficient basis for the garnishee process. In the case of *Kentzler v. C., M. & St. P. R. Co.* 47 Wis. 641, this court said: " By the law governing courts generally, every court has inherent power to issue writs of execution on its own judg-

ments, but not beyond its territorial jurisdiction. At the common law all process of courts is limited to the territory over which their jurisdiction extends, and the power of any court to issue extra-territorial process is not inherent in it, but comes only by express statutory grant. . . . The issuing of the execution within the territorial jurisdiction was within the general power of all courts, independently of statutory authority; and section 8 (requiring the execution to recite the time of docketing the judgment) went only to the form of the execution, and not to the authority to issue it." In this case it was held that an execution issued and directed to a sheriff of a county other than that in which the judgment was rendered, and in which county a transcript of the judgment had not been filed and docketed, was absolutely void. But the argument of the late learned chief justice clearly shows that, had the execution issued to the sheriff of the county in which the judgment was rendered, the decision would have been in favor of the validity of the execution. The statute on the subject of executions was not intended to take away the common-law power of the courts to issue executions to enforce their judgments. There are no negative words in the statute. We think the execution was not void, and was sufficient, therefore, to sustain the proceedings of garnishment. But, if it were necessary to have the judgment formally docketed against the defendant, McDonald, in order to validate the execution, the court would have ample power to order it so docketed *nunc pro tunc*. See *Hunt v. Grant*, 19 Wend. 90; *Blossom v. Barry*, 1 Lans. 190; *Corwith v. State Bank*, 18 Wis. 560; *Sabin v. Austin*, 19 Wis. 421; *Kennedy v. Knight*, 21 Wis. 340; *Wait v. Sherman*, 61 Wis. 119; *Northrup v. Shephard*, 23 Wis. 513.

The question whether the garnishees were indebted to McDonald alone, or to McDonald & Co., was, under the evidence, a question of fact with which we would not be

disposed to interfere were that a material question in determining this appeal. Whether a garnishee action under the statute is purely a legal action, or a purely equitable action, and, if purely equitable, it was error for the court to direct all the issues in the case to be tried by a jury, we do not feel called upon to decide on this appeal. See sec. 2843, R. S.; *Soenksen v. Weyhausen*, 32 Wis. 521.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.