RIESEN, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*December 20, 1901 — January 7, 1902.*

*Building contracts: Construction: Option in specifications: Waiver.*

The specifications for the construction of a city hall provided, among other things, that " proposals will be received for either steam or hydraulic elevators," and stated certain requirements that must be met if steam elevators were used, and certain others that must be met if hydraulic elevators were used. Plaintiff bid a lump sum for constructing the entire building, including the elevators, but did not specify the kind of elevators he intended to instal, and his bid was accepted. The contract thereupon entered into pursuant to such bid made no specific reference to elevators. *Held,* that by failing to exercise the option in bidding which the specifications tendered to him plaintiff waived the same, and that he was bound to put in either steam or hydraulic elevators as the city might elect.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

The plaintiff built the city hall in the city of *Milwaukee* in pursuance of a written contract, and has received the contract price therefor, and brings this action to recover

$3,800 and interest, being the extra cost of putting hydraulic elevators into the building instead of steam elevators, his claim being that he was only required by his contract to put in steam elevators, and that he was afterwards required by the common council to put in hydraulic elevators. There is really no dispute as to the facts, the controversy being as to the construction of the building contract. The action was tried by the court.

The evidence showed the following facts: Prior to June 3, 1893, the city of Milwaukee adopted plans and specifications for the building of a new city hall, and gave public notice to contractors requesting bids for the work according to such plans and specifications, reserving the right to reject any and all bids. The specifications were very lengthy, and were printed in book form. That portion relating to elevators commenced as follows:

"GENERAL. Proposals will be received for either steam or hydraulic elevators, and bidders must state in sending their proposals which class of elevator they recommend for the work. The right is reserved to reject any and all proposals received.

"NUMBER OF ELEVATORS. There shall be four passenger elevators, each traveling from the basement floor to the eighth floor.

"FOUNDATIONS. The contractor for the elevators must provide any and all foundations required for his engine, machines, pumps or other parts of his work.

"GUIDE POSTS. The contractor for the elevators must furnish all of the guide posts, which shall be of iron, and shall be securely fastened at the different floors.

"OVERHEAD BEAMS. All overhead beams, hitch beams, and sheave beams shall be of steel, and of sufficient section to sustain the load when the car is stopped at full speed, without any appreciable deflection. The contractor for the elevators must provide these beams, but other contractors will provide the proper supports in place for them.

"CABLES. If hydraulic elevators are used, each elevator must have six cables, five eighths of an inch in diameter. If steam elevators are used, each elevator must have at least

three cables, not less than three fourths of an inch in diameter.    The cars shall cost $500 each, and that amount must be allotted in the proposals for that purpose.

" STEAM ENGINES.  If steam elevators are used, each elevator must be provided with an independent double elevator engine, having steam cylinders of nine inches stroke and not less than seven inches diameter.    The steam machines must be so geared as to give a speed of the car not less than 250 feet per minute with a steam pressure of seventy pounds.

" HYDRAULIC MACHINES FOR ELEVATORS.  If hydraulic elevators are offered, it is preferred to use the horizontal type of machine."

In response to the request for bids, the plaintiff submitted his bid for the entire work in writing as follows:

" I, the subscriber, do hereby propose to furnish all material and do the work according to plans and specifications on file in the office of the board of public works, of the proposed city hall, and the advertisement for proposals pertaining thereto, as follows: Mason work, cut stone work, structural iron work, ornamental iron work, ornamental terra cotta work, fireproofing, copper work, roofing, slating and skylights, carpenter work, tile and cement flooring, marble work, painting and glazing, drainage, plumbing and gas fitting, elevators, steam heating apparatus, vault doors,— for the sum of six hundred ninety-six thousand two hundred and forty eight dollars ($696,248.00), agreeable to the terms of your advertisement inviting proposals for such work, and pledge myself to enter into a written contract with the city of *Milwaukee*, with satisfactory sureties for the performance of the same.

The plaintiff's bid was accepted, and (some changes having been made in the stone work, by which an additional expense of $17,400 was incurred) on the 7th day of August, 1893, the plaintiff and the city entered into a contract pursuant to the bid, by which the plaintiff agreed to furnish all the material and do all the work necessary in the construction of the city hall, according to the plans and specifications adopted (except as to the stone work, which was to be according to the changes agreed upon), for the sum of $713,648.    The contract contains no mention of the subject

of elevators, and none of the remaining provisions of the contract are deemed necessary to be stated, except the provision that the contractor should not assign any part of the contract, nor sublet the work or any part of it, without the written consent of the board of public works of the city.

The plaintiff proceeded with the erection of the building, and in the fall of 1893 made a contract with the Kieckhefer Elevator Company to instal four steam elevators in the building at the proper time. At some time after this contract was let, the board of public works objected to the contract with the Kieckhefer Elevator Company, and refused to recognize or consent to it, and in October, 1894, and before it was necessary to commence operations with reference to the elevators, the board of public works reported to the city council that the contractor proposed to place steam elevators in the building, and recommended that hydraulic elevators be required. On the 10th of December, 1894, the city council passed a resolution directing that hydraulic elevators be placed in the building, and notice to this effect was given by the board of public works to the plaintiff, who then proceeded to instal hydraulic elevators at an additional necessary expense of $3,800, which he now sues to recover. Upon these facts the court concluded that the city had the right to select which kind of elevators should be used, and rightfully exercised such right, and that the plaintiff could not recover. From judgment of dismissal of the complaint the plaintiff appeals.

For the appellant there was a brief by *McElroy & Eschweiler*, and oral argument by *F. C. Eschweiler*.

For the respondent there was a brief by *Carl Runge*, city attorney, and *R. S. Witte*, assistant city attorney, and oral argument by *Mr. Runge*.

WINSLOW, J. The plaintiff's claim is that the building contract gave him the option as to whether steam or hy-

draulic elevators should be used in the building, and this is the only question we find it necessary to consider. It is certainly true that where an obligation is in the alternative, i. e. to do one thing or another, the right of election (at least up to the time when the contract is to be discharged) is with the promisor, unless the contract expressly or by necessary implication vests the right elsewhere. *Dessert v. Scott,* 58 Wis. 390; *Drake v. Harrison,* 69 Wis. 99. The contract in question is to be construed in the light of these principles. The contract itself contains no express provision giving the contractor any right of election, nor does it even contain a provision in terms allowing the contractor to instal steam elevators or hydraulic elevators. In fact it does not refer to elevators, except as they are included in the general provision that the building is to be built according to the plans and specifications, which are thus imported into the contract. So the right of election, if it exists in the plaintiff at all, must be found in the plans and specifications, or rather in the specifications, because the plans contain nothing to justify the plaintiff's claim.

A casual glance at the specifications would perhaps lead one to think that the contractor had the choice as to which kind of elevators he should furnish, but more careful examination seems to make it certain that this is not the proper construction. Remembering that the specifications were adopted long in advance of the contract, and for the primary purpose of providing a basis for bids, it becomes very apparent that the option given to contractors or bidders is an option in bids, not an option in elevators after the contract is made. The specifications say that "proposals will be received for either steam or hydraulic elevators," and later they specify certain requirements that must be met *if* steam elevators are used, and certain others that must be met *if* hydraulic elevators are used. These alternative requirements are of course essential in order to inform the

bidder what he must meet in case he exercises his option, but it is not perceived how they afford ground for claiming that when the contract has been let for the whole building, including elevators, the contractor may choose which kind of elevators he will put in. The bidder had the right to choose on which style he would bid, being informed that if he bid on one kind he must meet certain conditions, and if upon the other kind he must meet certain other conditions; but when he became a contractor, the bidder's option had necessarily passed,— it had become *functus officio*. Certainly it cannot be argued with reason that the specifications were intended to reserve one option to the bidder and one to the contractor. The plaintiff himself would doubtless admit that he had his choice to bid for either steam or hydraulic elevators, and that if he had bid in the alternative it would have been the right of the city to choose which kind it would use. In other words, there was an option on bids, which was to be exercised by the bidders, and an option on the elevators after the bids were in, which was to be exercised by the city. The bidder declined to exercise his option in bidding. Did he thereby destroy or acquire to himself the city's option? Clearly not; the city's option remained intact. By bidding and entering into the contract in general terms, as he did, he waived the option which the specifications tendered him, and, in effect, offered to put in either steam or hydraulic elevators, as the city might by timely action select. This being our construction of the contract, the judgment below must be affirmed.

*By the Court.*— Judgment affirmed.